**K.R., an infant, by her parents and next friends M.R. and K.R.R., and M.R. and K.R.R., Plaintiffs–Appellees,**

v.

**ANDERSON COMMUNITY SCHOOL CORPORATION, Defendant–Appellant.**

**No. 95–2497.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1996.

Decided April 12, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied May 28, 1996.

---

Milo G. Gray, Jr. (argued), Gary W. Ricks, Indiana Protection & Advocacy Services, Indianapolis, IN, for Plaintiffs-Appellees.

David W. Gotshall (argued), Anderson Community School Corporation, Anderson, IN, for Defendant-Appellant.

Lisa F. Tanselle, Indiana School Boards Association, Indianapolis, IN, Amicus Curiae for Indiana School Boards Association.

William Kanter, Frank A. Rosenfeld, Department of Justice, Civil Division, Appellate Section, Washington, DC, for Amicus Curiae U.S.

Craig J. Bobay, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, IN, for Amicus Curiae Indiana Federation of Catholic School Families.

Jeffrey Spitzer-Resnick, Wisconsin Coalition for Advocacy, Madison, WI, for Amicus Curiae Wisconsin Coalition for Advocacy.

Before CUMMINGS, EASTERBROOK and DIANE P. WOOD, Circuit Judges.

CUMMINGS, Circuit Judge.

K.R. is a multiply handicapped student in need of a full-time instructional assistant to attend school. If K.R. attended public school, she would indisputably be entitled to all services prescribed by her individual education plan ("IEP") under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("IDEA"), including the instructional assistant. However, K.R.'s parents have opted out of the public system and

have voluntarily placed K.R. in a private parochial school. The question, therefore, is whether the IDEA or its accompanying regulations require Anderson Community Schools to provide the instructional assistant at the private school. The district court held that the public school was obligated to provide the service and issued a permanent injunction and declaratory judgment in favor of K.R. Because the IDEA and its regulations do not entitle K.R. to the full range of services at a private school, but rather give the public school discretion in cases such as this, we now reverse.

## I.

It is not disputed that K.R. is a child with disabilities who is eligible under the IDEA for special educational and related services. K.R. was a six-year-old kindergarten student at the time this dispute arose. She suffers from myelomeningocele, spina bifida, and hydrocephalus with a shunt, which create difficulties with expressive language, motor skills, and mobility, requiring her to use a wheelchair. She thus needs assistance with positioning for activities, reaching and grasping, self-help skills, motor movements, mobility, and expression. Implementation of her IEP (determined in conformity with the IDEA) requires, among other necessary related services, a full-time instructional assistant.

K.R. received services from community agencies prior to attending public school at Anderson Community Schools. At age three, K.R. was enrolled in the pre-school program at the public school where she received various services related to her disabilities. In the spring and summer of 1993, case conference meetings were held to work out K.R.'s IEP for the 1993–1994 school year in anticipation of her continued attendance at public school. The IEP provided for placement in a kindergarten class with related services for speech therapy, occupational therapy, transportation, and a full-time instructional assistant. During the conference, K.R.'s parents asked whether K.R. would receive all of the services if she attended St. Mary's School, a private parochial school. The public school told K.R.'s parents that it would not provide an instructional assistant if she attended private school. Nonetheless, K.R.'s parents voluntarily enrolled her at St. Mary's for kindergarten. During K.R.'s attendance at St. Mary's, the public school has provided K.R. with speech therapy, occupational therapy, and physical therapy at a public school site, as well as transportation to that site. Since the local system determined that it would not provide K.R. with an instructional assistant on site at the private school, and since St. Mary's chose not to provide the service itself, K.R.'s mother attended St. Mary's with her to fulfill the duties of an instructional assistant prior to the district court's decision.

K.R.'s parents requested a due process hearing, which was held on October 26, 1993. The hearing officer concluded that the public school is not obligated to provide an instructional assistant at the private school. The Indiana Board of Special Education Appeals upheld the decision on April 7, 1994. Having exhausted their administrative remedies, K.R. and her parents filed a complaint in the district court. On May 25, 1995, the district court issued a permanent injunction and declaratory judgment holding that the public school was required to provide a full-time instructional assistant at the private school. *K.R. ex rel. M.R. v. Anderson Community Sch. Corp.*, 887 F.Supp. 1217 (S.D.Ind.1995). The district court based its decision on a regulation that requires the special education services to private school students be "comparable" to the services provided to public school students.

## II.

The IDEA's statutory scheme is typical of a federal granting program. The statute provides federal grants to states, which in turn fund local school districts, for assistance in educating disabled students. The states that elect to participate in the program receive a grant of not more than forty percent of the average per pupil expenditure for all students nationwide multiplied by the number of disabled students in the particular state receiving the grant. 20 U.S.C. § 1411(a). According to the United States Department of Education ("DOE"), federal grants supply only about eight percent of the

funds needed to provide disabled students with special services. Nonetheless, a state that accepts IDEA grants must have in effect a policy that "assures all children with disabilities the right to a free appropriate public education" and a plan that assures such an education will be available. 20 U.S.C. § 1412(1) & (2)(B). The local school district must prepare for each disabled child an IEP that identifies the special education and related services that are necessary to meet that child's needs, and the district must then offer to provide those services at full public expense. 20 U.S.C. §§ 1412(4), 1414(a)(5). The district must place the child in a private school at public expense if it is unable to provide the necessary services in a public school. 20 U.S.C. § 1413(a)(4)(B).

The statute and accompanying regulations then specifically address the situation where parents voluntarily place their child in a private school. The statute requires that each state's plan

> set forth policies and procedures to assure—
>
> (A) that, to the extent consistent with the number and location of children with disabilities in the State who are enrolled in private elementary and secondary schools, provision is made for the participation of such children in the program assisted or carried out under this subchapter by providing for such children special education and related services . . . .

20 U.S.C. § 1413(a)(4). The regulations help clarify the public school's obligation with respect to disabled students in private schools. If the parents voluntarily place their child in a private school, "the public agency is not required by this part to pay for the child's education at the private school or facility. However, the public agency shall make services available to the child as provided under §§ 300.450–300.452." 34 C.F.R. § 300.403. In turn, Section 300.452 states, "[e]ach [local educational agency] shall provide special education and related services designed to meet the needs of private school children with disabilities residing in the jurisdiction of the agency." 34 C.F.R. § 300.452. Section 300.451 further requires the local agency to ensure that, "[t]o the extent consistent with

their number and location in the State, provision is made for the participation of private school children with disabilities in the program assisted or carried out under this part by providing them with special education and related services . . . ." 34 C.F.R. § 300.451.

Section 300.451 also requires the local agency to meet the requirements of 34 C.F.R. §§ 76.651–76.662 (we will call this series of regulations the "cross-referenced" regulations). 34 C.F.R. § 300.451(b). These cross-referenced regulations address conditions that the state and the subgrantees (local public schools) must meet regarding students in private schools, and they form the basis of the district court's opinion. Under these regulations, the local agency "shall provide students enrolled in private schools with a genuine opportunity for equitable participation" and do so "in a manner that is consistent with the number of eligible private school students and their needs." 34 C.F.R. § 76.651(a)(1) & (2). It shall consult with students' representatives regarding which children will receive benefits, what benefits they will receive, how the children's needs will be identified, and how the benefits will be provided. 34 C.F.R. § 76.652(a). Further, the local agency shall determine the following "on a basis comparable to that used" for public school students:

> (a) The needs of students enrolled in private schools.
>
> (b) The number of those students who will participate in a project.
>
> (c) The benefits that the [agency] will provide under the program to those students.

34 C.F.R. § 76.653. Finally, at least for our purposes, "[t]he program benefits that [an agency] provides for students enrolled in private schools must be comparable in quality, scope, and opportunity for participation to the program benefits that the [agency] provides for students enrolled in public schools." 34 C.F.R. § 76.654(a).

### III.

The district court rested its decision entirely on what it called the "plain language" of Section 76.654(a) that requires "comparable" benefits. 887 F.Supp. at 1223. Because

K.R. would receive an instructional assistant in the public school, the court concluded that she was entitled to a comparable benefit in the private school. The district court stated that "comparable" did not mean "identical"— the only limitation on "comparable" that it acknowledged-but concluded that a full-time instructional assistant was the only comparable alternative. *Id.* at 1225. The court's analysis is problematic because it focused only on one section of a rather complex set of statutory and regulatory provisions. And not insignificantly, the district court's conclusion contradicts the conventional understanding of the IDEA, including the DOE's understanding.

■ Setting the regulations to one side, the statutory provisions make clear that Congress did not intend public schools to provide disabled students who are voluntarily placed in private schools with benefits comparable to those of disabled public school students in all instances. The IDEA refers to three categories of disabled students: those attending public school, those placed in private school by the local school district, and those attending private school voluntarily. For students attending public school, the statute requires in no uncertain terms that all children with disabilities receive a free appropriate public education that covers the expense of *all* special education and related services. 20 U.S.C. §§ 1412(1) & (2)(B), 1412(4), 1414(a)(5). In stark contrast is the provision governing students voluntarily placed in private school. It requires only that "provision is made for the participation of such children" in the local IDEA program, and even at that, only "to the extent consistent with the number and location of children with disabilities" enrolled in private schools. 20 U.S.C. § 1413(a)(4)(A). And if any doubt is left that Congress intended a lesser requirement in Section 1413(a)(4)(A) for children voluntarily placed in private school, the very next subsection mandates that children placed in private school *by the local school district* receive the same benefits as children attending public school. 20 U.S.C. § 1413(a)(4)(B). Thus Congress not only differentiated between public and private schools, but also between children voluntarily attending private school and children placed in private school by the local school district. The statute leaves little doubt that, of the three groups, Congress intended to give disabled students voluntarily attending private school a lesser entitlement.

■ The regulations adopted under the IDEA in no way undermine the conclusion that public schools need not provide comparable benefits to students voluntarily attending private school in every instance. They in fact demonstrate that when dealing with such students, the public school has discretion over what services to provide. The regulations track the statute in differentiating the three categories of disabled students. Thus they require that all children with disabilities receive a free appropriate public education, 34 C.F.R. §§ 300.121 & 300.126, but separately address the requirements for disabled children placed in, or voluntarily attending, private school. 34 C.F.R. §§ 300.400–300.487. Children placed in private school by the local school district have "all of the rights of a child with a disability who is served by a public agency." 34 C.F.R. § 300.401(b). However, children voluntarily attending private school are governed by different regulations—regulations which state that the public school need not pay for the child's education, 34 C.F.R. § 300.403(a), and that provision must be made for participation in special education and related services, but only to the extent consistent with the number of disabled private school children in the State. 34 C.F.R. § 300.451(a).

■ It is abundantly clear from the distinctions drawn in both the statute and the regulations that neither Congress nor the DOE intended for public schools to provide students such as K.R. with services comparable to what she would receive in the public school. If Congress or the DOE had so intended, there would have been no need to draft separate provisions for the three categories of students referenced by the drafters. In light of all this, one would not expect to find that the cross-referenced regulations, 34 C.F.R. §§ 76.651–76.662, altered the clear statutory and regulatory scheme. Indeed, those regulations make clear that the public school has a great deal of discretion in pro-

viding benefits to disabled private school students. The public school need only provide "a genuine opportunity for equitable participation," 34 C.F.R. § 76.651(a)(1), and it must consult with representatives of the student to determine, among other things, *which* children will receive benefits and *what* benefits will be provided. 34 C.F.R. § 76.652(a)(1) & (3). The consultation mandated under Section 76.652 is entirely separate from the consultation required to formulate the IEP.

█ Only Section 76.654(a), relied upon by the district court, lends support to the notion that disabled students voluntarily attending private school must be treated the same as public school students. It states that the "program benefits that [an agency] provides for students enrolled in private schools must be comparable in quality, scope, and opportunity for participation to the program benefits that the [agency] provides for students enrolled in public schools." 34 C.F.R. § 76.654(a). But read in light of the statutory scheme outlined above and the other regulations, which precisely track the statutory division of public and private school students, the only reasonable interpretation of Section 76.654(a) is that the comparability requirement is limited to the "program benefits that [an agency] provides." Sections 76.651 and 76.652 explicitly give the public school discretion over what benefits to provide; however, when benefits are provided, Section 76.654 requires that they be comparable to benefits for public school students. Section 76.654 is not by its terms a mandate that private school students shall receive full benefits.

█ Our interpretation of Section 76.654 is guided not only by the text, it is also supported by separation-of-powers principles. An agency does not have authority to invade the province of the legislature by promulgating regulations that contravene the governing statute—in other words, to make law. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213–214, 96 S.Ct. 1375, 1390–91, 47 L.Ed.2d 668. Thus regulations that are inconsistent with the statute are void. *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792; *United States v. Larionoff*, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48. Given the statutory scheme as outlined above, which clearly affords public schools discretion in providing services to private school students, interpreting "comparable" in Section 76.654 as requiring identical services would render that regulation void as inconsistent with the statute. The district court arguably did not go quite so far, but its determination that a full-time instructional assistant was the only "comparable" alternative (which just happened to be identical to what K.R. would receive at the public school) failed to take into account the discretion afforded public schools in deciding which services to provide. For example, public schools may legitimately regulate the provision of expensive services, such as full-time assistants, in order to ration limited resources across more students. In light of the statutory provisions, "comparable" must be interpreted in a manner that permits public schools discretion in providing services to voluntarily placed private school students.

█ The district court's interpretation of Section 76.654 is further contradicted by the conventional understanding of the IDEA and its regulations. *See Goodall ex rel. Goodall v. Stafford County Sch. Bd.*, 930 F.2d 363 (4th Cir.1991), *certiorari denied*, 502 U.S. 864, 112 S.Ct. 188, 116 L.Ed.2d 149. The DOE has consistently interpreted the regulations as giving public schools discretion in providing benefits to students voluntarily attending private school. 45 Fed.Reg. 22570 (1980) (stating that public school need only offer a genuine opportunity for equitable participation, and that what constitutes "genuine opportunity" will "vary widely, depending on local circumstances"); 49 Fed.Reg. 48522 (1984) (interpreting statute as providing public schools "with the discretion to devise ... the most efficient scheme possible for providing adequate special education and related services to a number of, but not necessarily all, private school handicapped children"—an interpretation that "has been consistently followed by the Department"); 16 Educ. For Handicapped L. Rep. 1398–1400 (1990) (response letter stating that whether or not public school needs to provide on-site services at private school depends on the specific facts of each case); 20 Individuals With Disabilities Educ. L. Rep. 1440 (1994) (agen-

cy memorandum stating that private school children do not have an individual entitlement to the full range of services offered public school children, but must only be afforded a genuine opportunity for equitable participation); 22 Individuals With Disabilities Educ. L. Rep. 369 (1994) (response letter stating same). We are aware of no evidence that the IDEA or its regulations have ever been interpreted otherwise. An agency's interpretation of its own regulations is entitled to substantial deference, unless it is plainly erroneous or inconsistent with the regulations. *Thomas Jefferson Univ. v. Shalala,* —— U.S. ——, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405. Based on our analysis of the regulations, we find nothing plainly erroneous in the DOE's interpretation nor is it inconsistent with the regulations. We therefore adopt its interpretation as an accurate understanding of the law.

## IV.

■ The only remaining question is whether the public school in this case properly exercised its discretion as outlined in the cross-referenced regulations. The standard is whether the student was provided with a genuine opportunity for equitable participation. We agree with the Fourth Circuit—the only other Circuit to have addressed this issue—that the essential component is that of opportunity. *Goodall,* 930 F.2d at 368. Where the public school makes available the necessary service at a public institution, giving the disabled student a genuine opportunity to participate, and nothing in the record indicates that it has otherwise abused its discretion, the public school has discharged its obligation. See *id.* at 368–369. K.R. was offered the service of a full-time instructional assistant at Anderson Community School. We have no reason to doubt the opportunity was genuine: nothing in the record demonstrates that K.R. was prevented from attending the public school by anything other than a desire to attend private school; and nothing demonstrates that the public school would have failed to provide the instructional assistant had K.R. decided to return. K.R. was thus provided with a genuine opportunity that she rejected.

Most telling, though, is the fact that Anderson Community School did not simply discard its obligations under the IDEA when K.R. chose to attend private school. The public school has provided K.R. with speech therapy, occupational therapy, and physical therapy at a public school site during her attendance at St. Mary's. In providing these services at a public site and declining to provide an instructional assistant to a single student in the private school, it is evident that the public school fairly exercised its discretion to consider the number of eligible private school students and their needs in deciding what benefits will be provided. 34 C.F.R. §§ 76.651, 76.652(a)(3). A complete failure to provide any services, especially those that can be provided at a neutral or public school site at flexible times, would be strong evidence that the public school had abused its discretion. But there is no evidence here that Anderson Community School eschewed its responsibility under the IDEA.

## V.

We conclude that the IDEA and its regulations do not require a public school to make comparable provisions for a disabled student voluntarily attending private school as for disabled public school students. Rather, public schools are given discretion under the law and need only provide voluntarily placed private school students a genuine opportunity for equitable participation. Here, Anderson Community School afforded K.R. a genuine opportunity for the services of an instructional assistant at a public school, and she declined. Further, the public school's provision of other related services demonstrates that it reasonably exercised its discretion rather than eschew its responsibility once K.R. chose to attend private school. The decision of the district court is therefore reversed.