ROSS, Circuit Judge,
dissenting.
I disagree with the majority that the district court erred in granting summary judgment in favor of ISD No. 273, and thus dissent.
As to the Westendorps’ religious discrimination claim, the majority believes that the evidence “strongly suggests” that the school district’s “long-standing ‘ policy, which it maintains today, of not providing direct, on-site special education and related services at private schools, regardless of their religious or secular orientation” is a “mere pretext for religious discrimination.” Maj. Op. at 997. To me, the fact that the school district has provided special education services at a nonreligious private preschool and to a home-schooled student does not raise an inference that it has discriminated on the basis of religion in refusing to provide on-site services in the K-12 classroom setting, which is the issue in this case. Moreover, in concluding there is a disputed issue of fact as to pretext, the majority has improperly engaged in fact finding and ignored the parties’ stipulation that “the material facts of this case are not in dispute.” Indeed, in the course of its opinion, the majority transforms a finding of a disputed fact into a finding of undisputed fact. On page 16, the majority states that ISD No. 273 “simply denied [Aaron] services at Calvin Christian School because it is a private religious school” and “would have denied services to any disabled student at a private religious school.” While it is undisputed that the school district denies on-site services to students at private *1003 schools, it is not undisputed that services are denied because of the religious nature of the school.
In addition, the majority’s characterization of the school district’s policy as “a mere ad hoc rationalization of an irrational policy” ignores the evidence. Maj. Op. at 997. Penny Kodrich, the school district’s director of special services, stated that the policy was long-standing and was designed to maintain control over the quality of the district’s programs and personnel, foster integrated teamwork and communication between special education and regular staff, and maximize benefits to students based on limited financial resources. Kodrich further stated that if the school district had to provide on-site services at private schools these goals would be frustrated. For example, regarding quality concerns, Kodrich explained that the special services staff work as part of an integrated team with the general education staff and if services were provided at private schools, the school district would have no control over the selection, training, and coordination of private staff members.
Regarding cost considerations, Kodrich explained that the school district “constantly endeavors to provide the maximum educational benefit to a large population of disabled students based on a very limited set of resources.” J.A. at 152. She further explained that “[b]y pooling direct special education resources in public school sites the School District can realize economic efficiencies by sharing and integrating resources.” Id. In particular, she noted that the services of a paraprofessional “can and are frequently shared by more than one student” and that “[i]f the school district was required to send individual paraprofessionals out to remote sites, the savings realized by these efficiencies would be lost.” Id. In addition, Wayne Erickson, manager of the state division of special education, stated that, based on his financial analysis, provision of on-site services to disabled private school students would result in additional expenditures of at least $10,814,027.00 for school districts and $5,882,830.00 for the state. Id. at 144. He also stated that it was impossible to estimate additional costs if school districts provided on-site services at private schools since special education students enrolled in public schools might then choose private schools. Id. at 145. Thus, the majority incorrectly states that “there is no evidence that ISD No. 273 denied services at Calvin Christian School because economies of scale, or geographical considerations, [made] it economically infeasible to provide certain services at private school locations.” Maj. Op. at 1001 (internal quotation omitted).
Moreover, and importantly, the majority ignores the Supreme Court’s admonition that “courts are not to ‘substitute their own notion of sound educational policy for those of the school authorities which they review.’ ” Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 610 (8th Cir.1997) (quoting Board of Educ. v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), cert. denied, — U.S.-, 118 S.Ct. 1840, 140 L.Ed.2d 1090 (1998)). This is so because “[e]ourts ‘lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy[.]’ ” Id. at 613 (quoting Rowley, 458 U.S. at 208, 102 S.Ct. 3034). Especially difficult questions facing school districts concern “implement[ing] the policy of educating all disabled students” in light of limited financial resources, and “the sufficiency of that education must be evaluated in light of the available resources.” Id. at 612.
I also disagree with the majority’s holding that ISD No. 273’s conduct violated the IDEA before it was amended in 1997. The pre-amended statute provided that disabled students who were placed in private schools by the state or school district were entitled to “special education and related services ... at no cost to their parents or guardian.” 20 U.S.C. § 1413(a)(4)(B)© (1994). In contrast, disabled students who were unilaterally placed in private schools by their parents were only entitled to participate in special education programs and services “to the extent consistent with the number and location of’ disabled students within the state. Id. at § 1413(a)(4)(A) (1994).
In 1997 Congress amended the statute to make clear that the IDEA “does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at *1004 a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.” 20 U.S.C.A. § 1412(a)(10)(C)(i) (West Supp.1998). As the majority concedes, “Aaron has no right under the 1997 Amendments to receive ISD No. 273-funded services at Calvin Christian School.” Maj. Op. at 998 (citing Foley v. Special Sch. Dist. of St. Louis County, 153 F.3d 863, 865 (8th Cir.1998) (“1997 Amendments expressly provide that public school agencies are not required to pay the cost of special education services for a particular child”)).
In enacting the 1997 Amendments, Congress merely “clarif[ied] the responsibility of public school districts to children with disabilities who are placed by their parents in private schools.” S.Rep. No. 17, 105th Cong. 1st. Sess. 13 (1997). Thus, I believe the amended IDEA applies to all of the Westendorps’ IDEA claims and precludes relief. See KR. ex rel. M.R. v. Anderson Community Sch. Corp., 81 F.3d 673 (7th Cir.1996), vacated and remanded for reconsideration in light of 1997 Amendments to IDEA,—U.S.-, 117 S.Ct. 2502, 138 L.Ed.2d 1007, and on remand, 125 F.3d 1017, 1019 (7th Cir.1997) (1997 Amendments were “legislative clarification”), cert. denied, — U.S. -, 118 S.Ct. 1360, 140 L.Ed.2d 510 (1998); Donald B. v. Board of Sch. Comm’r, 117 F.3d 1371, 1373 n. 2 (11th Cir.1997) (1997 Amendments “do not alter substantively” § 1413(a)(4)); Cefalu ex rel. Cefalu v. East Baton Rouge Parish Sch. Bd., 117 F.3d 231, 232 (5th Cir.1997) (same).
Even if the 1997 Amendments are not controlling, I do not believe that the pre-amended IDEA required that a school district provide on-site services to a disabled student who was unilaterally placed at a private school. “The goal of IDEA is to provide access to public education for all handicapped students.” Fort Zumwalt Sch. Dist., 119 F.3d at 612. “IDEA does not require that a school either maximize a student’s potential or provide the best possible education at public expense.” Id. “The statute only requires that a public school provide sufficient specialized services so that the student benefits from his education.” Id. Moreover, this court has held that the preamended IDEA and “regulations promulgated thereunder g[a]ve the school district discretion in selecting the location where it w[ould] educate a handicapped child.” Schuldt v. Mankato Ind. Sch. Dist. No. 77, 937 F.2d 1357, 1361 (8th Cir.1991), cert. denied, 502 U.S. 1059, 112 S.Ct. 937, 117 L.Ed.2d 108 (1992). It is undisputed that ISD No. 273 provides Aaron a paraprofessional at a public school, and his parents have not questioned the quality of the services that Aaron receives.
The majority is persuaded by the Tenth Circuit’s analysis in Fowler v. Unified Sch. Dist. No. 259, 107 F.3d 797, vacated and remanded for reconsideration in light of 1997 Amendments to IDEA, — U.S.-, 117 S.Ct. 2503, 138 L.Ed.2d 1008, and on remand, 128 F.3d 1431 (10th Cir.1997). In Fowler, the Tenth Circuit “recognized that the IDEA and its regulations afford considerable discretion to [school districts] to determine the manner and extent of services to be provided” to disabled students in private schools. 107 F.3d at 806. Although the court did not believe that the school district was obligated to provide on-site services of a full-time interpreter at a private school, id, it held that a school district had to “pay for that service an amount up to, but not more than, the average cost to the District to provide that same service to hearing-impaired students in the public school setting.” Id. at 807-08. However, the court acknowledged that its holding appeared to conflict with IDEA regulations, id. at 808 n. 12, the interpretation of the Department of Education (DOE), id. at 804-05, and the Seventh Circuit’s decision in Anderson, id. at 806.
Unlike the majority and the Tenth Circuit, I agree with the Seventh Circuit that “[w]here the public school makes available the necessary service at a public institution, giving the disabled student a genuine opportunity to participate, and nothing in the record indicates that it has otherwise abused its discretion, the public school has discharged its obligation” under the pre-amended IDEA. Anderson, 81 F.3d at 680; see also Goodall v. Stafford County Sch. Bd., 930 F.2d 363, 369 (4th Cir.) (school district fulfilled its statutory obligation by offering disabled student services of speech interpreter at public *1005 school), cert. denied, 502 U.S. 864, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991).
In this case, the majority relies on 34 C.F.R. § 76.654(a) (1996), which required that the benefits a school district provided for private school students be “comparable in quality, scope, and opportunity for participation to” the benefits provided for public school students. However, as explained in Anderson, the regulation was “not by its terms a mandate that private school students shall receive full benefits.” 81 F.3d at 679. Rather, “read in light of the statutory scheme ... and the other regulations, ... the only reasonable interpretation of Section 76.654(a) is that the comparability requirement [wa]s limited to the program benefits that [a district] provide[d].” Anderson, 81 F.3d at 679 (internal quotation omitted). In other words, because public school districts had “discretion over what benefits to provide^]” the regulation only required that “when benefits [we]re provided ... that they [would] be comparable to benefits for public school students.” Id.
Thus, the majority’s “determination that a full-time instructional assistant was the only ‘comparable’ alternative ... fail[s] to take into account the discretion afforded public schools in deciding which services to provide.” Id. Moreover, and, “not insignificantly,” the majority’s determination conflicts with the DOE’s interpretation of the regulations. Id. at 678. As the majority notes, the DOE’s position was that the “regulations d[id] not confer on every parentally-placed child with a disability an individual entitlement to services.” Maj. Op. at 1000 n. 2 (internal quotation omitted). Because the DOE’s interpretation was not plainly erroneous or inconsistent with the regulations, “it must be given controlling weight.” Board of Regents v. Shalala, 53 F.3d 940, 943 (8th Cir.1995).
In sum, I believe that in providing the services of a paraprofessional to Aaron “at a public site and declining to provide an instructional assistant to a single student in the private school, it is evident that [ISD No. 273] fairly exercised its discretion to consider the number of eligible private school students and their needs in deciding what benefits w[ould] be provided.” Anderson, 81 F.3d at 680. Because “there is no evidence here that [ISD No. 273] eschewed its responsibility under the IDEA,” id., and because I believe that the district court properly rejected the Westendorps’ other claims, I would affirm the grant of summary judgment in favor of ISD No. 273. I thus dissent.