IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-31045

_____


CHARLES TONY CEFALU, JR., Behalf of
his minor son rpi Charles Tony Cefalu, III,

Plaintiff-Appellee,


versus

EAST BATON ROUGE PARISH SCHOOL BOARD;
STATE OF LOUISIANA, Through the
Department of Education,

Defendants-Appellants.
_____

Appeal from the United States District Court for the
Middle District of Louisiana, Baton Rouge
_____

January 3, 1997

Before POLITZ, Chief Judge, and JOLLY and BARKSDALE, Circuit
Judges.

E. GRADY JOLLY, Circuit Judge:

The single question presented by this appeal is whether, under
the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.
§ 1400 et seq., a school board is legally obligated to provide a
sign language interpreter to a disabled student voluntarily
enrolled in private school. The district court found that the IDEA
required the school board to provide the on-site interpreter, and
the school board appeals. We vacate the decision of the district
court and remand this case for further consideration in the light
of our opinion.

Charles Tony Cefalu, III ("Cefalu") has suffered from a hearing impairment since birth. Cefalu attended public schools until the conclusion of the 1992-93 school year. Cefalu's individualized education program ("IEP"), prepared in accordance with the requirements of the IDEA, included the services of a sign language interpreter.

In June 1993, the Supreme Court held that a public school district did not violate the Establishment Clause by providing services under the IDEA to students voluntarily attending parochial schools. Zobrest v. Catalina Foothills Sch. Dist., 509 U.S. 1 (1993). Thereafter, Cefalu's parents withdrew their consent from a previously devised IEP, which included a sign language interpreter at a public school, and enrolled Cefalu at Redemptorist High School, a private school. The Cefalus then requested that a sign language interpreter be provided at Redemptorist. The school board refused the Cefalus' request and again offered a sign language interpreter at the public school. The Cefalus refused to consent and requested an IDEA due process hearing. See 20 U.S.C. § 1415(b)(2).

In October 1993, the administrative hearing officer ruled that the school board was not obligated to provide Cefalu with an interpreter while at Redemptorist, because the offer to provide an interpreter at the public school provided Cefalu with an opportunity for a free appropriate public education. The decision

of the hearing officer was affirmed on appeal to the state level review commission.  See 20 U.S.C. § 1415(c).  Cefalu then sought review in federal court.  See 20 U.S.C. § 1415(e)(2).

The federal district court heard cross-motions for summary judgment.  Based upon the record, consisting of the administrative record and a joint stipulation, the court granted Cefalu's motion and ordered the school board to provide a sign language interpreter at Redemptorist.  The court denied the board's motion to stay the judgment pending appeal.  The board did not seek a stay from this court.

II

A

We review the district court's grant of summary judgment de novo, using the standard utilized by the district court.  See, e.g., Brock v. Chater, 84 F.3d 726, 727 (5th Cir. 1996).  In conducting judicial review of an IDEA administrative decision, the court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(e)(2).

B

(1)

This appeal requires us to interpret the IDEA and its regulations. The IDEA provides federal grants to states, which in turn provide funds to local school districts to establish special education and related services for children with disabilities. States that accept the funds are required to adopt a policy and a plan that "assures all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412. The IDEA defines a "free appropriate public education" to include

Special education and related services that--

>(A) have been provided at public expense, under public supervision and direction, and without charge,

>(B) meet the standards of the State educational agency,

>(C) include an appropriate preschool, elementary, or secondary school education in the State involved, and

>(D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

20 U.S.C. § 1401(18). "The word 'public' is a term of art which refers to 'public expense,' whether at public or private schools." Dreher v. Amphitheater Unified Sch. Dist., 22 F.3d 228, 233 n.10 (9th Cir. 1994) (citing Florence County Sch. Dist. Four v. Carter, 114 S.Ct. 361, 365 (1993)).

Local school districts receiving funds under the IDEA are required to prepare an IEP for each disabled student, whether in public or private school. The IEP must identify the special education and related services that are necessary to meet that student's needs, and the district must offer to provide those services at public expense. 20 U.S.C. §§ 1412(4), 1414(a)(1), 1414(a)(5). If the district is unable to provide the necessary services to the disabled student, then the student must be placed in a private school that can address the student's needs at public expense. 20 U.S.C. § 1413(a)(4)(B). These mandatory private school students are distinguished under the IDEA and its regulations from students, such as Cefalu, who voluntarily are enrolled in private schools.

Students voluntarily attending private schools are addressed by the provision requiring each state's plan to

set forth policies and procedures to assure--

(A) that, to the extent consistent with the number and location of children with disabilities in the State who are enrolled in private elementary and secondary schools, provision is made for the participation of such children in the program assisted or carried out under this subchapter by providing for such children special education and related services.

20 U.S.C. § 1413(a)(4)(A). The school district is not required to pay a student's private school tuition if he is voluntarily enrolled in private school; however, the district "shall make services available to the child as provided" by other regulations enacted pursuant to the IDEA. 34 C.F.R. § 300.403.

The other regulations referenced above require each local educational agency to "provide special education and related services designed to meet the needs of private school children with disabilities residing in the jurisdiction of the agency." 34 C.F.R. § 300.452. Additionally, local agencies are to ensure that, "[t]o the extent consistent with their number and location in the State, provision is made for the participation of private school children with disabilities in the program assisted or carried out under this part by providing them with special education and related services." 34 C.F.R. § 300.451(a). Local education agencies are also charged with "provid[ing] students enrolled in private schools with a genuine opportunity for equitable participation" and "provid[ing] that opportunity to participate in a manner that is consistent with the number of eligible private school students and their needs." 34 C.F.R. § 76.651(a)(1) & (2). The local agency is required to consult with private school students' representatives regarding which students will receive benefits, how the students' needs will be identified, what benefits will be provided, and how benefits will be provided. 34 C.F.R. § 76.652(a). Local educational agencies are to determine the needs of private school students, the number of private school students to be participants in a project, and the benefits that the agency will provide to those students using a "basis comparable to that used . . . in providing for participation of public school students." 34 C.F.R. § 76.653. Finally, "[t]he program benefits

that [an agency] provides for students enrolled in private schools must be comparable in quality, scope, and opportunity for participation to the program benefits that the [agency] provides for students enrolled in public schools." 34 C.F.R. § 76.654(a).

It is clear, therefore, that the IDEA differentiates among three categories of disabled students: (1) those attending public schools; (2) those placed in private schools by local school districts; and (3) those attending private schools voluntarily. With respect to public school students, the IDEA requires that all children with disabilities receive a free appropriate public education that covers the expense of special education and related services. 20 U.S.C. §§ 1412(1), 1412(2)(B), 1412(4), 1414(a)(5). Students placed in private schools by local school districts are to receive the same benefits as those attending public schools. 20 U.S.C. § 1413(a)(4)(B). The regulations require that students voluntarily attending private schools be provided with an "equitable opportunity for participation" in the program "to the extent consistent with the number and location" of such students. 34 C.F.R. § 1413(a)(4)(A). Today, we are required to address the application of the IDEA only as it relates to this third category of disabled students.

(2)

When an attempt is made to apply the foregoing statutory provisions and regulations to specific cases involving disabled students voluntarily attending private school, we see that the IDEA

and its implementing regulations are amorphous in design and imprecise in message. By necessity, therefore, the statute and regulations must be regarded as affording considerable discretion to educational agencies because their terms are to be applied in sundry factual situations. Such flexibility for local officials, however, comes with attendant costs. The IDEA and the corresponding regulations seldom provide a road map to local educational agencies regarding the extent of their obligations under the Act and the manner in which those obligations must be fulfilled, thus leaving a considerable area open to dispute.

In attempting to glean the essence of the statute and regulations, however, certain points are salient as they relate to the question before us. First, and fundamental, the drafters of the IDEA plainly intended that students voluntarily enrolled in private schools be active participants in and beneficiaries of the program. See 20 U.S.C. § 1413(a)(4)(A) (West 1990). Such students are entitled to "a genuine opportunity for equitable participation" in programs and services provided under the IDEA. 34 C.F.R. § 76.651. It is clear that the statute does not mandate that services for students voluntarily enrolled at private schools be provided on-site at the private school. However, the refusal to provide services on-site implicates the student's right to "equitable participation."

It is implicit in the statute and the regulations that educational agencies must be afforded the broadest discretion to

design special programs in the light of the finite funds that are available. The regulations support the proposition that these limited resources must be distributed in a manner that allows the provision of necessary services to the greatest number of qualified students within in the relevant district, when all other appropriate criteria in the decision-making process have been considered. The regulations address this concern by stating that the average amount spent per pupil should not vary according to whether the student attends public or private school but, instead, should vary only according to the cost required to fulfill the special education needs of the student. 34 C.F.R. § 76.655. It is in this context that the obligation of the agency arises to "set forth policies and procedures to assure that, to the extent consistent with the number and location of handicapped children in the State who are enrolled in private elementary and secondary schools, provision is made for the participation of such children in the program assisted or carried out under this subchapter by providing for such children special education and related services." 20 U.S.C.A. § 1413(a)(4)(A) (West 1990) (emphasis added). This provision, which is also reflected in the regulations, allows the educational agency to exercise discretion in determining the manner in which services are to be provided to disabled children in public and private schools. This discretion is to be exercised in a way that assures the private school student a "genuine opportunity for equitable participation" in the program,

but, that also considers the "number of eligible private school students and their needs." 34 C.F.R. § 76.651. The word "equitable," certainly in the context of the finite funds available, means fair to all concerned, not simply fair to the private school student; in this context, it means not unfair to others depending on the same pool of money for services and benefits.

Thus, we arrive at our second point that is plain from the Act and regulations: although private school students are eligible to receive benefits under the program, they are not entitled to a greater share of benefits, nor of the funds providing those benefits, per student, than similarly-situated students in public schools.

The statute and regulations, therefore, lead to the following rule to apply in disputed cases in the posture of the one before us: The private school student must make an initial showing of a genuine need for on-site services, based upon more than mere convenience. Upon such showing, the agency must provide on-site services unless it presents a justifiable reason, either economic or non-economic, for its denial of on-site services. The student then bears the burden of showing that the agency's position is inconsistent with the IDEA and its regulations, or is not rationally supportable, or is otherwise arbitrary.

The general application of this rule will ensure that educational agencies fulfill their obligation to provide private

school students with a "genuine opportunity for equitable participation" in IDEA services. Under this general approach, private school students usually will, absent justifiable non-economic considerations, be provided comparable services on-site to the extent that such services can be provided on-site at the same approximate cost as that incurred in providing the services at other sites.[1] See Russman v. Sobol, 85 F.3d 1050, 1056-57 (2d Cir. 1996). The rule will also ensure that disproportionately large sums of scarce money are not required to be spent to benefit a reduced number of students.

## III

Finally, we come to the question whether the school board here is obligated to provide Cefalu an interpreter on-site at Redemptorist. In this connection, there is no evidence in the record that indicates the basis of the school board's decision.

---

[1]The Seventh Circuit in K.R. v. Anderson Community Sch. Corp., 81 F.3d 673 (7th Cir. 1996), held that educational agencies had broad discretion in determining what services to provide to students enrolled in private schools. K.R., 81 F.3d at 679. We agree that the agency has broad discretion in determining what services to provide generally; in other words, the agency has broad discretion in formulating an IEP for a student. The IDEA and the regulations grant discretion to the educational agency to determine what services to provide to an individual student, but, once that decision is made, and the student has made a showing of genuine need for on-site services, those services should be provided on-site at the private school, absent justification as noted above. If such justification is demonstrated, nothing in our opinion should be construed as precluding the agency and the affected parties from voluntarily negotiating a solution to their dispute that may result in services less than comparable to the services provided to a public school student.

Absent such evidence, we are unable to determine whether the denial of services under the IDEA was appropriate.[2]  For that reason, we VACATE the judgment of the district court and REMAND for further consideration and action in the light of this opinion.[3]

                                          VACATED and REMANDED.

_____

[2]The dissent charges that we are deciding more than is at issue in this appeal, pointing out that the stipulated issue is whether the school board is legally obligated to provide the subject service to Cefalu.  With due respect, our view of the case is that we cannot answer this question because we do not know the basis upon which the school board made its decision.  The dissent acknowledges that the school board's discretion to deny on-site services to private school students is limited.  There is nothing in the record to tell us whether the school board exceeded that limit; therefore, we conclude that this case must be remanded for further development on this point.

Neither do we understand how the dissent concludes that our interpretation of the IDEA and its regulations is inconsistent with the interpretation of the United States Department of Education.  There is nothing in this opinion that suggests that the local agency is automatically <u>required</u> to pay for Cefalu's education at Redemptorist.  Our opinion emphasizes, as do the regulations, that the private school student is entitled to a genuine opportunity for equitable participation and that the agency must "provide that opportunity to participate in a manner that is consistent with the number of eligible private school students and their needs."  There is nothing in our opinion that holds that an individual private school student is automatically <u>entitled</u> to receive on-site services comparable to those that he would receive at a public school.  Furthermore, there is nothing in this opinion that can be read to favor the private school setting over the public school setting when only one service can be provided.  Thus, we respectfully differ with the dissent's position that this opinion somehow conflicts with the interpretations promulgated by the Department of Education.

[3]For the first time in its reply brief, the State Department of Education requests that the Cefalus be required to reimburse it for the costs of the interpreter that the district court ordered it to provide during the pendency of this appeal.  As noted, the appellants did not seek a stay pending appeal.  In any event, we do not address the issue because it was first raised in a reply brief.

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting:


I respectfully dissent: (1) the issue presented is much more narrow than that seized by the majority; (2) its interpretation of the statute and regulations is inconsistent with the interpretation of the United States Department of Education, to which we should defer; and (3) its allocation of the burden of proof is not supported by the statute and regulations, and is inconsistent with our precedent. In order to develop these points, it is necessary to replow much of the ground turned already by the majority.

I.

Charles Tony Cefalu, III, who has had a hearing impairment since birth, was educated in public schools through the end of the 1992-93 school year. As required by the IDEA, he received special education and related services, including sign language interpreter services, pursuant to an individualized education plan (IEP).

In March 1993, an IEP for the 1993-94 school year was approved by Cefalu's parents. It specified that his special education program would include the services of an interpreter at a public middle school. In June, the Supreme Court held that a public school district did not violate the Establishment Clause by providing such services to a student attending a private school

voluntarily. *Zobrest v. Catalina Foothills School District*, 509 U.S. 1 (1993).

That summer, Cefalu's parents withdrew their consent to the 1993-94 IEP, enrolled Cefalu at Redemptorist High School, a private school, and requested a new IEP which would provide him with an interpreter there. At an IEP conference in August, school system officials refused the request and offered an IEP essentially identical to that of March 1993. The Cefalus refused to consent to the August 1993 IEP, and requested an IDEA due process hearing, pursuant to 20 U.S.C. § 1415(b)(2).

In October 1993, the administrative hearing officer ruled that the School Board was not obligated to provide Cefalu with an interpreter while at Redemptorist, because it had offered him a free appropriate public education in the public school system. On appeal to the state level review commission, 20 U.S.C. § 1415(c), the hearing officer's decision was affirmed. Cefalu then sought judicial review in federal court, as provided for by the IDEA, 20 U.S.C. § 1415(e)(2).

After hearing cross-motions for summary judgment, for which the record consisted of the administrative record and a joint stipulation, the district court granted Cefalu's, and ordered the Board to provide him with a sign language interpreter at Redemptorist. The court denied the Board's motion to stay the judgment pending appeal; it did not seek a stay from our court.

II.

The *stipulated, sole* issue before the district court was "whether the School Board is legally obligated to provide [Cefalu] with the related service of a sign language interpreter while he attends a private school in which he was unilaterally placed by his parents who rejected the offer of the School Board to provide appropriate services to [Cefalu], including an educational interpreter, in the public school system". That same question is presented here; needless to say, it is much more narrow than that seized by the majority.

Cefalu contends only that the statute and regulations give the School Board *no discretion whatsoever* to deny providing an interpreter at his private school. He does not contend, alternatively, that, if the School Board has discretion, it abused it. Accordingly, that is why, as the majority notes, "there is no evidence in the record that indicates the basis of the school board's decision". I disagree with its decision to remand for further consideration of whether the School Board's denial of services under the IDEA was appropriate, because that issue was not presented to us.

It goes without saying that the summary judgment is reviewed *de novo*, using the standard utilized by the district court. *E.g.*, **Brock v. Chater**, 84 F.3d 726, 727 (5th Cir. 1996). In conducting judicial review of an IDEA administrative decision, the court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its

--15--

decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate". 20 U.S.C. § 1415(e)(2). At issue is interpretation of the IDEA and regulations promulgated under it.

The IDEA provides federal grants to States, which in turn provide funds to local school districts, for assistance in providing special education and related services to children with disabilities. States that accept such grants are required to have in effect a policy that "assures all children with disabilities the right to a free appropriate public education" and a plan that assures the availability of such an education to such students. 20 U.S.C. § 1412. The IDEA defines a "free appropriate public education" as

> special education and related services that--
>         (A) have been provided at public expense, under public supervision and direction, and without charge,
>         (B) meet the standards of the State educational agency,
>         (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and
>         (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

20 U.S.C. § 1401(18). "The word 'public' is a term of art which refers to 'public expense,' whether at public or private schools." *Dreher v. Amphitheater Unified School Dist.*, 22 F.3d 228, 233 n.10

(9th Cir. 1994) (citing *Florence County School Dist. Four v. Carter*, 510 U.S. 7, 114 S. Ct. 361, 365 (1993)).

Local school districts receiving funds under the IDEA are required to prepare an IEP for each disabled student; the IEP must identify the special education and related services that are necessary to meet that student's needs; and the district must offer to provide those services at public expense. 20 U.S.C. §§ 1412(4), 1414(a)(1), (5). And, if the district is unable to provide the necessary services in a public school, the district must place the student in a private school at public expense. 20 U.S.C. § 1413(a)(4)(B).

But, for students such as Cefalu, attending private schools voluntarily, the IDEA requires that each state's plan

> set forth policies and procedures to assure--
>
> > (A) that, to the extent consistent with the number and location of children with disabilities in the State who are enrolled in private elementary and secondary schools, provision is made for the participation of such children in the program assisted or carried out under this subchapter by providing for such children special education and related services ....

20 U.S.C. § 1413(a)(4)(A). Along that line, regulations promulgated by the United States Department of Education provide that, if parents place their child in a private school voluntarily, "the public agency is not required ... to pay for the child's education at the private school or facility. However, the public

--17--

agency shall make services available to the child as provided under §§ 300.450-300.452."  34 C.F.R. § 300.403.

One of these referenced sections, § 300.452, states that "[e]ach [local educational agency] shall provide special education and related services designed to meet the needs of private school children with disabilities residing in the jurisdiction of the agency."  34 C.F.R. § 300.452.  Another, § 300.451, requires the local agency to ensure that, "[t]o the extent consistent with their number and location in the State, provision is made for the participation of private school children with disabilities in the program assisted or carried out under this part by providing them with special education and related services ...."  34 C.F.R. § 300.451(a).

Section 300.451 also requires local educational agencies to satisfy the requirements of 34 C.F.R. §§ 76.651-76.662.  34 C.F.R. § 300.451(b).  Those cross-referenced regulations address conditions that the State and the subgrantees (local public schools) must meet with respect to private school students.  Under those regulations, local educational agencies "shall provide students enrolled in private schools with a genuine opportunity for equitable participation", and "shall provide that opportunity to participate in a manner that is consistent with the number of eligible private school students and their needs."  34 C.F.R. § 76.651(a)(1) and (2).  The local agency is required to consult with private school students' representatives regarding which students

--18--

will receive benefits, how the students' needs will be identified, what benefits will be provided, and how benefits will be provided. 34 C.F.R. § 76.652(a). And, the local agency is required to determine the following "on a basis comparable to that used ... in providing for participation of public school students":

> (a) The needs of students enrolled in private schools.
>
> (b) The number of those students who will participate in a project.
>
> (c) The benefits that the [agency] will provide under the program to those students.

34 C.F.R. § 76.653. Finally, "[t]he program benefits that [an agency] provides for students enrolled in private schools must be comparable in quality, scope, and opportunity for participation to the program benefits that the [agency] provides for students enrolled in public schools." 34 C.F.R. § 76.654(a).

The district court adopted the opinion in *K. R. v. Anderson Community School Corp.*, 887 F. Supp. 1217 (S.D. Ind. 1995). The *K. R.* district court relied on § 76.654(a)'s requirement of "comparable" benefits; it reasoned that, because K. R. would receive an instructional assistant in the public school, she was entitled to one in the private school, because there was no other "comparable" alternative. 887 F. Supp. at 1225.

But, after the district court rendered its decision in the case at hand, the Seventh Circuit reversed the *K. R.* district court. *K. R. v. Anderson Community School Corp.*, 81 F.3d 673 (7th Cir. 1996). The Seventh Circuit held that the district court erred

--19--

by focusing only on one section of the statutory and regulatory provisions, and that its interpretation of § 76.654 was contradicted by the conventional understanding of the IDEA and its regulations.

I would hold, consistent with the Seventh Circuit, that the district court erred. The IDEA differentiates among three categories of disabled students: (1) those attending public schools; (2) those placed in private schools by local school districts; and (3) those attending private schools voluntarily. For public school students, the IDEA requires that all children with disabilities receive a free appropriate public education that covers the expense of all special education and related services. 20 U.S.C. §§ 1412(1) and (2)(B), 1412(4), 1414(a)(5). Students placed in private schools by local school districts are to receive the same benefits as those attending public schools. 20 U.S.C. § 1413(a)(4)(B). But, the provision governing students placed in private schools voluntarily requires only that, "to the extent consistent with the number and location" of such students, "provision is made for the participation of such children" in the local IDEA program. 20 U.S.C. § 1413(a)(4)(A).

The regulations are consistent with the IDEA and, read as a whole, demonstrate that local educational agencies have discretion to determine what services to provide disabled students attending private school voluntarily. Consistent with the IDEA, the regulations differentiate among the same three categories of

--20--

students. They require that all disabled children receive a free appropriate public education, 34 C.F.R. §§ 300.121, 300.126; but they address separately the requirements for disabled children placed in, as opposed to attending voluntarily, private schools. 34 C.F.R. §§ 300.400-300.487.

Students placed in private schools by the local school district have "all of the rights of a child with a disability who is served by a public agency". 34 C.F.R. § 300.401(b). Students attending private school voluntarily, however, are governed by different regulations. The local agency is not required to pay for the student's education, but "shall make services available to the child as provided under §§ 300.450-300.452." 34 C.F.R. § 300.403(a).

For such students, the state educational agency must ensure that provision is made for participation of disabled children attending private school voluntarily, but only "to the extent consistent with their number and location in the State". 34 C.F.R. § 300.451(a). And, the state educational agency also must ensure that the requirements of 34 C.F.R. §§ 76.651-76.662 are met. 34 C.F.R. § 300.450(b).

As stated, those regulations require a local educational agency to determine, on a basis comparable to that used in providing for participation by public school students, the needs of students enrolled in private schools, the number of those students who will participate in a project, and the benefits that will be

provided to those students. 34 C.F.R. § 76.653. Local educational agencies are required to "provide students enrolled in private schools with a genuine opportunity for equitable participation", and must "provide that opportunity to participate in a manner that is consistent with the number of eligible private school students and their needs." 34 C.F.R. § 76.651(a)(1) and (2). Finally, the "program benefits that a [local educational agency] provides for students enrolled in private schools must be comparable in quality, scope, and opportunity for participation to the program benefits that the [agency] provides for students enrolled in public schools." 34 C.F.R. § 76.654(a).

The distinctions drawn in the IDEA and regulations make it clear that disabled students attending private schools voluntarily are not automatically entitled to receive services totally comparable to what they would receive if enrolled in public schools. If Congress had intended to require the provision of the same benefits to *all* disabled students, there would have been no need to differentiate among the three categories of students. Obviously, we should assume that Congress intended for each of the provisions to have meaning, and should not treat as surplusage the separate provisions for children attending private school voluntarily. *See, e.g.*, **Bailey v. United States**, ___ U.S. ___, 116 S. Ct. 501, 506-07 (1995).

The cross-referenced regulations, 34 C.F.R. §§ 76.651-76.662, do not undermine this conclusion. The local educational agency

--22--

need only provide "a genuine opportunity for equitable participation", 34 C.F.R. § 76.651(a)(1); and it must consult with representatives of the student to determine, among other things, *which* children will receive benefits, and *what* benefits will be provided. 34 C.F.R. § 76.652.

Only § 76.654(a), relied on by the district court, suggests that disabled students attending private school voluntarily must receive services comparable to those provided to students in public school. It states that the "program benefits that [an agency] provides for students enrolled in private schools must be comparable in quality, scope, and opportunity for participation to the program benefits that the [agency] provides for students enrolled in public schools". 34 C.F.R. § 76.654(a). I agree with the Seventh Circuit's interpretation of § 76.654(a):

> [R]ead in light of the statutory scheme ... and the other regulations, which precisely track the statutory division of public and private school students, the only reasonable interpretation of Section 76.654(a) is that the comparability requirement is limited to the "program benefits that [an agency] provides." Sections 76.651 and 76.652 explicitly give the public school discretion over what benefits to provide; however, when benefits are provided, Section 76.654 requires that they be comparable to benefits for public school students. Section 76.654 is not by its terms a mandate that private school students shall receive full benefits.

*K. R.*, 81 F.3d at 679 (quoting 34 C.F.R. § 76.654(a)).

The Seventh Circuit's interpretation is supported by the Department of Education's consistent interpretation of its

regulations as giving discretion in providing benefits to students attending private school voluntarily. *See **Letter to Livingston***, 17 Educ. for Handicapped L. Rep. 523 (1991) (if a free appropriate public education has been made available for a child with a disability, and the parents choose to place the child in a private school, the public agency is not required to pay for the child's education at the private school or to make a free appropriate public education available to the child at the private school); ***Letter to Metlink***, 18 Individuals with Disabilities Educ. L. Rep. 276 (1991) (public agency may choose not to serve every parentally-placed private school student with disabilities); ***Letter to Schmidt***, 20 Individuals with Disabilities Educ. L. Rep. 1224 (***Zobrest*** decision did not change agency interpretation that parentally-placed children with disabilities do not have an individual entitlement to services); ***OSEP Memorandum 94-17***, 20 Individuals with Disabilities Educ. L. Rep. 1440 (1994) (children with disabilities placed in private schools by their parents do not have an individual entitlement to services, but private school children as a group must be afforded a genuine opportunity for equitable participation in special education programs conducted by local school districts); ***Letter to McConnell***, 22 Individuals with Disabilities Educ. L. Rep. 369 (1994) (school districts generally must provide parentally-placed private school students with genuine opportunity for equitable participation in special education programs they conduct).

The majority's new rule is far more than an "interpretation" of the statute and existing regulations; indeed, it establishes a new rule which is not consistent with the interpretation of those regulations by the United States Department of Education (the agency that promulgated them). Unlike the majority, the DOE has not interpreted the IDEA and regulations as requiring that local educational agencies "must provide on-site services" to disabled students attending private schools voluntarily unless they justify the denial with "rationally supportable" or not "otherwise arbitrary" reasons. In that the DOE's "interpretation of its own regulations is" neither "plainly erroneous [n]or inconsistent with the regulations", it is "entitled to substantial deference". *K. R.*, 81 F.3d at 680 (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 114 S. Ct. 2381, 2386 (1994)). Because the DOE's interpretation is reasonable, the majority errs by failing to give deference to it, even if the majority might think a different interpretation is also reasonable. In short, we should leave the promulgation of additional regulations to the agency entrusted with that responsibility.

In *Goodall v. Stafford County School Bd.*, 930 F.2d 363, 367 (4th Cir.), *cert. denied*, 502 U.S. 864 (1991), the Fourth Circuit held, *inter alia*, that, where a school district offered to provide an interpreter to a hearing-impaired student at a public school, the IDEA's predecessor, the Education of the Handicapped Act, did not require the district to make that service available to the

--25--

student at a private school.  Very recently, in *Russman v. Sobol*, 85 F.3d 1050 (2d Cir. 1996), cited by the majority as support for its new rule, the Second Circuit viewed *Goodall* as unpersuasive, 85 F.3d at 1055, and stated that the Seventh Circuit's decision "accorded excessive discretion to school authorities to deny the on-site provision of services to disabled students in private schools", *id.* at 1056.  But, it agreed with the Seventh Circuit that "the rights accorded disabled students in public schools differ from those accorded such students voluntarily placed in private schools".  *Id.*

The Second Circuit interpreted the statutory language limiting the obligation of States to provide special education and related services to private school students "to the extent consistent with the number and location" as giving school districts "discretion to deny on-site provision of services at private schools where economies of scale in providing the services at one place exist". *Id.*  It reasoned that, "[w]here the cost of special services does not vary with where they are provided, the IDEA and regulations regarding voluntary private school students make little sense if such services may be made available only in public schools." *Id.* Because the school district's denial of services for Russman at a private school was based only on its view that the Establishment Clause prohibited the provision of such services at a parochial school (a contention the court rejected post-*Zobrest*), and the school district made no claim that the provision of such services

--26--

at the private school was significantly more expensive than providing them at the public school, the court held that the school district had to provide the services at the private school. *Id*. at 1057.

Seizing on this recent decision, Cefalu asserted at oral argument that **Russman** supports his position, claiming that the Board's offer to provide him an interpreter at any public school in the district except the two magnet schools foreclosed it from contending that providing an interpreter at Redemptorist would create an economic hardship. Although Cefalu made a similar contention in the administrative proceedings and in the district court, he did not do so in his appellate brief. Moreover, the record does not contain any evidence as to the number of hearing-impaired students in other public schools in the district. Accordingly, we do not know, for example, whether the offer to provide services to Cefalu at another public school would have entailed providing them on a one-to-one basis, or to a group of hearing-impaired students, including him. Despite the bare record, and Cefalu's failure to brief the issue of economic (or non-economic) feasibility, the majority nevertheless reaches out to decide it.

The majority's decision to remand for further development of the record and application of its new rule is facilitated by its adoption of a new "burden-shifting" approach: if a voluntary private school student makes an initial showing of a genuine need,

based upon more than mere convenience, for services to be provided on-site, the school district must provide them, unless it presents a justifiable reason, either economic or non-economic, for its denial of on-site services. If it does, the student then bears the burden of showing that the agency's position is inconsistent with the IDEA and regulations, or is not rationally supportable, or is otherwise arbitrary. This approach is inconsistent with our court's precedent, which the majority does not even mention, much less distinguish. That precedent places "the burden of demonstrating the inappropriateness" of the educational placement provided for in an IEP on the party attacking it. *See **Salley v. St. Tammany Parish School Board***, 57 F.3d 458, 467 (5th Cir. 1995). We are required to follow it.

In addition, among other things, I am concerned that such an allocation of the burden of proof will further strain school districts' resources, by forcing them to hire economists, accountants, psychologists, educational administrators, or other experts to furnish evidence concerning the economic or non-economic feasibility of providing services to disabled students attending private schools voluntarily. As the Supreme Court noted in ***Rowley***, the IDEA was enacted pursuant to the spending clause; when legislating under that clause, if Congress intends to impose a condition on the grant of federal funds, it must do so unambiguously. 458 U.S. at 204 n.26 (citing ***Pennhurst State School & Hosp. v. Halderman***, 451 U.S. 1, 17 (1981)). The IDEA does not

unambiguously condition the State's receipt of federal funds on its proving the infeasibility of providing services to disabled students attending private school voluntarily.

In sum, the earlier quoted stipulated sole issue should be answered as follows: the school district was not "legally obligated" (*required*) to provide Cefalu with an interpreter at his private school; under the IDEA, it had discretion to decline to do so. On the other hand, again consistent with the IDEA, that discretion is not unlimited; it is restrained by the above discussed statutory provisions and regulations, especially 20 U.S.C. § 1413(a)(4)(A) ("special education and related services" to be provided children with disabilities parentally-placed in private schools "to the extent consistent with [the children's] number and location"). It may well be that factors such as economies of scale, not addressed by this record, will compel the provision of such services at a private school, and that to not so provide them will be outside the discretion accorded the school district under the IDEA. But, again, that issue is not presented in this case.

### III.

For the foregoing reasons, I would reverse the judgment, vacate the injunction, and render judgment for the appellants.

--29--