968 F.Supp. 481 (1997)
Daniel and Margaret FOLEY, as parents and next friend of Clare Foley, Plaintiffs,
v.
The SPECIAL SCHOOL DISTRICT OF ST. LOUIS COUNTY, Defendant.
No. 4:95 CV 448 DDN.
United States District Court, E.D. Missouri, Eastern Division.
April 7, 1997.
*482 Michael H. Finkelstein, Missouri Protection & Advocacy Services, Jefferson City, MO, for Plaintiffs.
Celynda L. Brasher, Peper and Martin, James G. Thomeczek, Thomeczek Law Firm, St. Louis, MO, for Defendant.

MEMORANDUM
This action is before the court upon the motion of the defendant for summary judgment under Rule 56(c), Federal Rules of Civil Procedure (Doc. No. 25), and the motion of plaintiff for reconsideration (Doc. No. 31). The parties have consented to the exercise of authority by a United States Magistrate Judge under 28 U.S.C. § 636(c)(3).
Plaintiffs Daniel and Margaret Foley commenced this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1485, seeking judicial review of a three-member due process panel hearing held pursuant to 20 U.S.C. § 1415 and Missouri Revised Statutes § 162.961. Plaintiffs allege that the Special School District of St. Louis County ("SSD") is required under the IDEA to provide certain educational and related services to their daughter, Clare Foley ("Clare"), at St. Peter's Catholic School ("St.Peter's"), a private school. They ask the court to reverse the decision of the three-member hearing panel (which denied the request of services at St. Peter's), find that SSD has violated the law by failing to provide special education services to Clare at St. Peter's, order that such services as requested be provided, and award attorneys' fees and costs to plaintiffs.
On March 29, 1996, this court entered partial summary judgment in favor of defendant SSD, concluding that the services offered to Clare by the district fulfill the defendant's responsibility under the IDEA. Foley v. Special School District, 927 F.Supp. 1214 (E.D.Mo.1996).[1] In doing so, this court rejected plaintiffs' argument that Zobrest v. Catalina Foothills School District, 509 U.S. 1, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993), mandated that the services requested by the Foleys be provided to Clare at St. Peter's. Zobrest held that there was no First Amendment prohibition under the Establishment Clause to a school district placing a public employee in a parochial school to aid a student. Id. at 12-13, 113 S.Ct. at 2469. However, as this court noted, that case did not hold that the school district was required to do so under the IDEA.
*483 After granting defendant's motion for partial summary judgment, the court ordered the parties to advise the court of whether any further proceedings were necessary on the issue of plaintiffs' allegations of procedural violations of the IDEA, which had not been argued in the summary judgment pleadings. The parties then filed their responses and the court ordered that the "Suggestions in Support of Disposing of All Remaining Issues" (Doc. No. 25), filed by the defendant on April 12, 1996, be considered a motion for summary judgment on the issues raised therein. Plaintiffs subsequently filed a motion for reconsideration of this court's order granting partial summary judgment to SSD.

Motion for reconsideration
Plaintiffs' motion for reconsideration of this court's order of partial summary judgment relies on the recent decision in Russman v. Sobol, 85 F.3d 1050 (2d Cir.1996), which the court did not have the benefit of when considering the issues in this case. Plaintiffs argue that Russman supports their position that the IDEA requires SSD to provide the therapeutic services requested by Clare Foley in her private school setting. Defendant opposes the motion and distinguishes the Russman case from the instant case.
After this court rendered its decision granting partial summary judgment to the defendant, four circuit courts of appeal issued decisions considering the extent to which a school district must provide services to a student who is voluntarily placed in a private school by parents and whether the school district must provide these services on-site at a private school. Before reviewing those decisions, the court will set out the relevant statutory and regulatory provisions.
The IDEA requires participating states and their public education agencies, such as the SSD, to provide all students with disabilities with a free appropriate public education ("FAPE"). 20 U.S.C. §§ 1400(c) and 1412(1); Honig v. Doe, 484 U.S. 305, 308, 310, 108 S.Ct. 592, 596, 597, 98 L.Ed.2d 686 (1988). A "free appropriate public education" is defined as
special education and related services that 
(A) have been provided at public expense, under public supervision and direction, and without charge,
(B) meet the standards of the State educational agency,
(C) include an appropriate preschool, elementary, or secondary school education in the State involved, and
(D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.
20 U.S.C. § 1401(a)(18). The Act's requirement of providing a FAPE is satisfied when the state provides personalized instruction with sufficient support services to allow the disabled child to benefit educationally from that instruction; the requirement of a FAPE does not require the state to maximize each child's potential commensurate with the opportunity provided to nondisabled children. Board of Education v. Rowley, 458 U.S. 176, 189-190, 199-200, 202, 102 S.Ct. 3034, 3042, 3047-48, 3049, 73 L.Ed.2d 690 (1982). The intent of the IDEA was "more to open the door of public education to handicapped children on appropriate terms than to guarantee any particular level of education once inside." Id. at 192, 102 S.Ct. at 3042.
The statute also addresses the issue of disabled children who are enrolled in private schools. The IDEA requires that each state's plan
set forth policies and procedures to assure 
(A) that, to the extent consistent with the number and location of children with disabilities in the State who are enrolled in private elementary and secondary schools, provision is made for the participation of such children in the program assisted or carried out under this subchapter by providing for such children special education and related services; and
(B) that 
(i) children with disabilities in private schools and facilities will be provided special *484 education and related services (in conformance with an individualized education program as required by this subchapter) at no cost to their parents or guardian, if such children are placed in or referred to such schools or facilities by the State or appropriate local educational agency as the means of carrying out the requirements of this subchapter or any other applicable law requiring the provision of special education and related services to all children with disabilities within such State....
20 U.S.C. § 1413(a)(4)(A) and (B). The corresponding regulations promulgated by the United States Department of Education state that, if parents voluntarily place their child in a private school, "the public agency is not required by this part to pay for the child's education at the private school or facility. However, the public agency shall make services available to the child as provided under §§ 300.450-300.452." 34 C.F.R. § 300.403.
In turn, § 300.452 states that "[e]ach [local educational agency] shall provide special education and related services designed to meet the needs of private school children with disabilities residing in the jurisdiction of the agency." 34 C.F.R. § 300.452. Section 300.451 further requires the local agency to ensure that, "[t]o the extent consistent with their number and location in the State, provision is made for the participation of private school children with disabilities in the program assisted or carried out under this part by providing them with special education and related services...." 34 C.F.R. § 300.451.
Section 300.451 also requires the local agency to meet the requirements of 34 C.F.R. §§ 76.651-76.662. 34 C.F.R. § 300.451(b). These regulations address conditions that the state and the local public schools must meet regarding students in private schools. Under these regulations, the local agency "shall provide students enrolled in private schools with a genuine opportunity for equitable participation" and do so "in a manner that is consistent with the number of eligible private school students and their needs." 34 C.F.R. § 76.651(a)(1) and (2). It shall consult with students' representatives regarding where children will receive benefits, what benefits they will receive, how the children's needs will be identified, and how the benefits will be provided. 34 C.F.R. § 76.652(a). Further, the local agency shall determine, "on a basis comparable to that used" for public school students, (1) the needs of students enrolled in private schools, (2) the number of those students who will participate in a project, and (3) the benefits that the agency will provide under the program to those students. 34 C.F.R. § 76.653. In addition, the program benefits that an agency provides for students enrolled in private schools must be comparable in quality, scope and opportunity for participation to the program benefits that the agency provides for students enrolled in public schools. 34 C.F.R. § 76.654(a).
The issue in this case is whether the statute and the regulations require SSD to provide occupational, speech and physical therapy services to Clare, a student voluntarily enrolled at a private, parochial school, on-site at the private school. This court has held it is not. One of the decisions relied upon by this court in its earlier opinion was Goodall v. Stafford County School Board, 930 F.2d 363 (4th Cir.), cert. denied, 502 U.S. 864, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991), in which the court held that the school district complied with the IDEA by offering the services of a cued speech interpreter at a public school, thereby offering the student the "opportunity" to participate at the public school. Id. at 368-69.
Four other circuits have addressed the issue since this court's decision. Those four cases have held that the IDEA does not impose a requirement to provide services on-site at private schools for parentally-placed students, at least not in all cases. Three of four cases require courts to look at the cost involved in providing the services.
In K.R. v. Anderson Community School Corp., 81 F.3d 673 (7th Cir.1996), petition for cert. filed, 65 U.S.L.W. 3166 (Aug. 26, 1996) (No. 96-323), the child was in need of a full-time instructional assistant to attend school. *485 Id. at 675. Anderson found that the regulations show that public schools have discretion over what services to provide and the only issue is whether the public school properly exercised its discretion by providing a genuine opportunity for equitable participation. Id. at 678, 680. The court followed the decision in Goodall and found that where the public school makes available the necessary service at a public institution, giving the disabled student a genuine opportunity to participate, and nothing in the record indicates that it has otherwise abused its discretion, the public school has discharged its obligation. Id. at 680. Therefore, the court held that when the school district had offered her the services of an instructional assistant at a public school and also provided the child with speech therapy, occupational therapy and physical therapy at a public school site during her attendance at the private school, it had met the requirements of the IDEA. Id. at 680.
In Russman v. Sobol, 85 F.3d 1050 (2d Cir.1996), petition for cert. filed, 65 U.S.L.W. 3381 (Nov. 18, 1996) (No. 96-776), the child's Individualized Education Plan ("IEP") called for the services of a consultant teacher to work with the regular classroom teacher in modifying the academic curriculum for the student, a teaching aide to assist the student directly with her studies and speech and occupational therapy. Id. at 1052. The school district refused to implement the plan at a parochial school, as requested by the parents. Id. at 1053. The district provided speech and occupational therapy to other students at a "neutral" site at the parochial school, but the school district claimed that providing a consultant teacher and a teaching aide for the student at the parochial school would violate the Establishment Clause of the First Amendment. Id.
The court found that Anderson was "unquestionably correct that the rights accorded disabled students in public schools differ from those accorded such students voluntarily placed in private schools." Id. at 1056. However, the court found that the principal difference was the statute's language limiting the obligation of states to provide special education and related services to private school students "to the extent consistent with the number and location" of disabled children voluntarily in private schools. Id. The court found that Anderson had failed to analyze the import of that language with regard to the individualized service that was denied. Id. The court held that the reference to the "number" of students suggests only that school districts have discretion to deny on-site provision of services at private schools where economies of scale in providing the services at one place exist. Id. at 1056. As to the reference to "location," the court found that to mean only that, where the provision of services at a distant private school would entail significant additional costs, e.g., transportation, to be borne by the state, public schools can fulfill their statutory obligations by offering the services at a public school. Id.
Where the cost of special services does not vary with where they are provided, the IDEA and regulations regarding voluntary private school students make little sense if such services may be made available only in the public schools. The statute and regulations require that necessary services be provided to disabled private school students according to their needs rather than the name of their school ... and state that such services must be "comparable in quality, scope, and opportunity for participation" to those offered to public school students.... Use of the word "comparable" strongly suggests that the provision of services will usually take place outside the public school. Otherwise, the regulation would simply provide that any services for the disabled available at a public school must be open to private school students.
Moreover, if services required by the IDEA need be provided only in public schools absent fiscal concerns, then private school students are entitled under the IDEA to little more than after-school services. Most services required by an IEP must be provided during school hours to be effective.... Indeed, the principal purpose of the statutory and regulatory commands appears to make a child's disability irrelevant to the family's choice of school, at least where differences in costs of provision do not exist.
*486 Russman, 85 F.3d at 1056-57. The court found that the school district did not claim that providing the student with a teaching consultant and teaching aide at the parochial school was significantly more expensive than providing the same services at the public school and that the only reason offered was the district's view that the Establishment Clause prohibited the on-site provision of such services at a parochial school, an argument that the court rejected. Id. at 1057. Therefore, the court held that the district was obligated to provide the services on-site at the private, parochial school. Id.
In Cefalu v. East Baton Rouge Parish School Board, 103 F.3d 393 (5th Cir.1997), the court considered whether the IDEA required the school district to provide a sign language interpreter to a disabled student voluntarily enrolled at a private school. Id. at 394-95. The school board had offered him an interpreter at a public school. Id. at 395. The court held that the statute does not mandate that services for students voluntarily enrolled at private schools be provided on-site at the private school. Id. at 397. However, the court noted, refusal to provide services on-site implicates the student's right to "equitable participation." Id. The Cefalu court accorded local school agencies discretion to design special programs in the light of finite funds that are available. Id. "This discretion is to be exercised in a way that assures the private school student a `genuine opportunity for equitable participation' in the program, but, that also considers the `number of eligible private school students and their needs.'" Id. at 397 (citing 34 C.F.R. § 76.651). The court found no evidence in the record that indicated the basis of the school board's decision. Id. at 398. Absent such evidence, the court found it was unable to determine whether the denial of services under the IDEA was appropriate. The case was remanded to the district court for further consideration. Id. at 398-99.
In Fowler v. Unified School District, No. 259, 107 F.3d 797 (10th Cir.1997), the issue was whether the school district was required to pay for full-time sign language interpretive services at a private school. Id. at 799-800. Plaintiff sought the services on-site at the private school because those services only benefit the student if they accompany him throughout his educational day. Id. The court agreed that children who are voluntarily placed in private schools are entitled to some level of participation in special education services, but not necessarily the identical level as they would were they in public schools or in private schools pursuant to state or local agency placement. Id. at 805. The court rejected the proposition that the district was required to provide a full-time interpreter at the private school, once his parents have asked for the provision of such services. Id. at 805-06. "We agree with other courts in holding that the IDEA and its regulations create no automatic right to any and all special education services at a private school site for all students voluntarily attending such a school." Id.
The court also agreed with other circuit court decisions that have recognized that the IDEA and its regulations afford considerable discretion to educational agencies to determine the manner and extent of services to be provided. Id. at 805-06. However, the court noted, that discretion is not unfettered because, otherwise, the student's "genuine opportunity for equitable participation" and the requirement that benefits be "comparable" would be meaningless. Id. Therefore, the school district cannot simply deny the request to provide the services at the private school and then claim to have fulfilled its obligation under the IDEA by offering those services to the student at a public school. Id. at 805-06.
In defining the amount of discretion afforded to school districts, the court noted that the statute and regulations refer to all special education services whereas in practice there are different types of special education services. Id. at 806-07. For example, certain special education services can easily and effectively be provided to private school students at public school sites after school. Id. Other services, however, such as a sign language interpreter, cannot be effectively provided to a private school student anywhere other than the private school site, because they confer no benefit unless they accompany the child throughout his or her educational day. Id.
*487 The court found that the IDEA clearly contemplates parents voluntarily placing their disabled children in private schools and those children must be provided with an opportunity to participate in special education services offered at public schools. Id. at 807-08. "We accordingly hold, like Russman, that `[w]here the cost of special services does not vary with where they are provided, the IDEA and regulations regarding voluntary private school students make little sense if such services may be made available only in the public schools.'" Id. at 807 (quoting Russman, 85 F.3d at 1056.). In its case, the court noted, the individualized service at issue only benefited the child if it was provided to him on-site, throughout his educational day. Id. Therefore, the court required the district to pay for that service an amount up to, but not more than, the average cost to the district to provide that same service to hearing-impaired students in the public school setting. Id. The court then remanded the case for the district court to make findings on that issue. Id. at 809-10.
The United States Department of Education, through its Office of Special Education Programs, has consistently interpreted its regulations to mean that parentally-placed students attending private schools do not have an "individual entitlement to services" and that school districts have discretion in whether and where to provide such services. Letter to Anonymous, 23 Individuals with Disabilities Educ. L. Rep. 650 (1995) (whether parentally-placed private student will receive services and nature, extent and location of such services must be made by public agency in accordance with regulations; public agency not necessarily required to provide these on private school premises); Letter to Burch, 23 Individuals with Disabilities L. Rep. 560, 562 (1995) (regulations do not confer on parentally-placed private students an individual entitlement to services, but rather authorize state and local educational agencies to determine who will be served, and nature and extent of such services); Letter to McConnell, 22 Individuals with Disabilities L. Rep. 369 (1994) (school district not necessarily required by the "equitable participation" provisions to provide services on premises of private school to parentally-placed children with disabilities whom it has elected to serve); OSEP Memorandum 94-17, 20 Individuals with Disabilities L. Rep. 1440 (1994) (children with disabilities placed in private schools by their parents do not have an individual entitlement to services, but private school children as a group must be afforded a genuine opportunity for equitable participation in special education programs conducted by local school districts); Letter to Schmidt, 20 Individuals with Disabilities L. Rep. 1224 (1993) (Zobrest decision did not change agency interpretation that parentally-placed children with disabilities do not have an individual entitlement to services); Letter to Williams, 18 Individuals with Disabilities L. Rep. 742 (1992) (IDEA does not provide parentally-placed private school students with individual entitlement to services; rather, federal regulations establish process for determining which children should be served); Letter to Mentink, 18 Individuals with Disabilities L. Rep. 276 (1991) (regulations do not confer on every parentally-placed child an individual entitlement to services; public agency may choose not to serve every parentally-placed private school student with disabilities; public agency is to determine number to be served, nature and extent of services); Letter to Anonymous, 16 Educ. for the Handicapped L. Rep. 1398 (1990) (state and local educational agencies "do not necessarily have to provide services on the premises of private schools in order to meet their obligations" under the statute; whether local school district has to provide on-site services to meet the "equitable participation" requirement depends on specific facts of the case).
The department's interpretation of its own regulations is entitled to substantial deference, unless it is plainly erroneous or inconsistent with the regulations. Thomas Jefferson University v. Shalala, 512 U.S. 504, 511-12, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994). Based on this court's analysis of the regulations, the DOE's interpretation is not plainly erroneous or inconsistent with the regulations.
The decisions that have been rendered since the order granting partial summary *488 judgment to SSD in this case do not change the court's conclusion that SSD has met its obligation under the IDEA. While the only reason given to the plaintiffs by SSD in this case for denying the requested services at St. Peter's was the constitutional requirement of separation of church and state (Legal File at 112), the parties have stipulated that SSD witnesses would testify that it would be more costly to provide the therapy and language services to Clare at St. Peter's than at the public school (Legal File at 98). In addition, there is no evidence that the services only benefit Clare if they are provided on-site. Clare's IEP calls for her to receive occupational therapy, speech therapy and physical therapy and language services. (Legal File at 97-98, 111.) These are not services, such as a sign language interpreter, that must accompany her throughout the educational day. See Fowler, 107 F.3d at 806-07. In addition, it is undisputed that Clare has improved academically while receiving the services provided by SSD at the public school. (Legal File at 98-99.) Therefore, the IEP developed for her and implemented at the public school have allowed her to benefit educationally from that instruction. See Rowley, 458 U.S. at 189-190, 200, 203, 102 S.Ct. at 3042, 3047-48, 3049.
For these reasons, the motion of plaintiff for reconsideration is denied.

Procedural claims
In two subparagraphs of their complaint, plaintiffs allege procedural violations of the IDEA. In subparagraphs (h) and (i), they allege that the three-member hearing panel erred by (1) failing to conclude that SSD failed to adhere to the procedural safeguards required by the IDEA, subpart E, and (2) failing to conclude that none of the written notice and consent procedures required by the IDEA were followed. (Complaint at 16.) Plaintiffs allege that defendant failed to adequately notify them of their procedural safeguards and appeal rights following the defendant's decision not to furnish the requested services. In doing so, they allege that defendant failed to comply with the due process requirements of the IDEA, 20 U.S.C. § 1415(b)(1)(D), and the attendant regulations, 34 C.F.R. §§ 300.500-300.505. As a result, plaintiffs allege, Clare has been denied a free appropriate public education.
Defendant denies that there was a violation of plaintiffs' procedural rights under the IDEA and moves for summary judgment on this claim.
This court must grant summary judgment if, based upon the pleadings, admissions, depositions and affidavits, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Board of Education, Island Trees Union Free School District v. Pico, 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). The moving party must initially demonstrate the absence of an issue for trial. Celotex Corporation, 477 U.S. at 323, 106 S.Ct. at 2552-53. Any doubt as to the existence of a material fact must be resolved in favor of the party opposing the motion. Board of Education v. Pico, 457 U.S. at 863, 102 S.Ct. at 2806.
Nevertheless, once a motion is properly made and supported, the non-moving party may not rest upon the allegations in the pleadings but must instead set forth evidence of specific facts showing that there is a genuine issue of material fact for trial. Fed. R.Civ.P. 56(e); Buford v. Tremayne, 747 F.2d 445, 447 (8th Cir.1984). Summary judgment must be granted to the movant if, after adequate time for discovery, the non-moving party fails to produce any proof sufficient to support an element essential to the party's case and upon which the party will bear the burden of proof at trial. Celotex Corporation, 477 U.S. at 322-24, 106 S.Ct. at 2552-53.
The IDEA and its regulations require that once a request for an evaluation or specialized placement or services has been made and rejected, the school district must notify the parents. 20 U.S.C. § 1415(b)(1)(C); 34 C.F.R. § 300.504. This notification must include, among other items, an explanation as to why the requested services were refused, all options that were considered and why those options were rejected. 34 C.F.R. § 300.505(a)(2). In addition, the notice must fully advise the parents of their right to and *489 procedures for appeal of the decision. 34 C.F.R. § 505(a)(1).
The plaintiffs allege that (1) they never executed the Consent for Initial Placement (Legal File at 206) and (2) they never received an explanation for SSD's denial nor provided her with a copy of any law, statute or regulation substantiating SSD's decision (Transcript on Appeal at 28, 35). In support, they point out that Walt Pankow, dissenting member of the three-member panel, based his dissent in part on the failure of SSD to advise the Foleys of their rights. (Legal File at 14-17.)
The record shows that on August 25, 1993, Dr. David T. Willard, director of special education support services, notified plaintiffs in writing that the district could not meet plaintiffs' letter request that the services be provided in the parochial school setting. Dr. Willard's letter offered alternative educational opportunities by either providing the services at a public school or after-school program or dual enrollment. (Legal File at 198.) A copy of the procedural rights available to parents and students were enclosed with Willard's letter. (Id.)
The record further indicates that on September 8, 1993, a meeting of the IEP team was held to develop Clare's IEP. At that meeting, plaintiffs met with seven representatives of defendant and three representatives of St. Peter's School. (Legal file at 103.) At that meeting, an initial IEP[2] was developed for services for Clare. (Legal File at 104.)
After the IEP was developed in the meetings of September 8 and October 13, 1993, although plaintiffs requested that the services be provided at St. Peter's School, Legal File at 104, 110-112, defendant recommended placement of Clare in a public school for receipt of the services and provided justification for the placement. (Legal File at 110-112, 223-224.) Options considered and rejected were noted. (Id.) On September 15, 1993, Debbie Smith, coordinator of SSD's Special Non-Public Access Program ("SNAP"), briefly recounted the placement discussions between plaintiffs and defendant and stated that the services could not be provided at the parochial school site "[d]ue to state guidelines regarding the separation of church and state." (Legal File at 200-201.) In her letter of October 25, 1993, following the second IEP team meeting, Smith advised plaintiffs about the procedures for administrative review of the defendant's determinations. (Legal File at 231.) By their letter of November 4, 1993, plaintiffs invoked their right to this administrative review. (Legal File at 233-234.)
Margaret Foley testified before the three-member hearing panel about the frustration she felt from delays after the Foleys had reactivated Clare's file. (Transcript on Appeal at 25.) Her frustrations increased as the 1993-94 school year became close at hand and defendant had not yet developed and implemented an IEP for Clare. (Transcript on Appeal at 25.) Margaret Foley testified that Dr. Willard did not tell the Foleys why their request for services at St. Peter's could not be met. (Transcript on Appeal at 28.) However, she testified that after she received Willard's letter, she called Willard and asked him why the services could not be provided at St. Peter's and he said that SSD was awaiting a decision from the Attorney General's Office about how the Zobrest decision would affect Missouri and SSD had not received a ruling yet. (Id. at 48-49.) She also testified that she then called Dr. Heskett, director of elementary and secondary education, to discuss how the Zobrest opinion affected the services the Foleys sought for Clare. (Id. at 49.) She also testified that Debbie Smith informed her in writing by letter dated September 15, 1993, about the issue of separation of church and state. (Id. at 29, 49-50.)
This Court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. Based on the record, defendant substantially complied with the statutory procedural *490 safeguards. The procedural deficiencies cited by plaintiffs did not materially affect the issue in this case, that is, whether Clare should receive her services on site at the private, parochial school. See Independent School District v. S.D., 88 F.3d 556, 562 (8th Cir.1996). "An IEP should be set aside only if `procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits." Id. (quoting Roland M. v. Concord School Committee., 910 F.2d 983, 994 (1st Cir.1990), cert. denied, 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991)). See also Evans v. District No. 17, 841 F.2d 824, 830-31 (8th Cir. 1988).
This court has previously concluded that Clare received a free, appropriate public education. Plaintiffs were provided with copies of their procedural safeguards and invoked them. There was no substantial delay in the delivery of services that could be attributed to the defendant. In summer 1993, plaintiffs notified defendant that they would be seeking services. By August 1993, defendant responded that it could not provide services on the premises of St. Peter's School. An initial IEP for Clare was in place by September 8, 1993. However, the parents were still requesting that the services be provided at St. Peter's. No delay in implementing Clare's IEP, regardless of whether plaintiffs caused the delay by their continued request for services in a private school setting or defendant's insistence of a public school setting, either resulted in a hampering of plaintiffs' participation in the formulation of Clare's IEP or deprived Clare of her educational benefits.
Plaintiffs also argue that the services provided were not appropriate. They cite stress, sense of separation and discrimination. As this court has already concluded, the services provided to Clare met the requirements of the IDEA. Educationally, Clare benefitted from the services provided to her by defendant. Plaintiffs can point to no harm to Clare resulting from the defendant's conduct.
Therefore, the motion of the defendant for summary judgment on plaintiffs' procedural claims is sustained. An appropriate order is issued herewith.
NOTES
[1] The facts of the case are set out in that opinion.
[2] At this meeting, it was determined that further assessment should be made of Clare's requirements for services of an Occupational Therapist, a Physical Therapist, and a Speech/Language Pathologist. (Legal File at 97.) On October 13, 1993, the IEP team reconvened, with the plaintiffs participating, and determined Clare's needs in these regards. (Legal File at 97-98, 215.)