Joan PETER; Sarah Peter, a minor, by and through her parent and natural guardian Joan Peter; Krista Westendorp; Douglas Westendorp; Aaron Westendorp, a minor, by and through his parents and natural guardians Krista Westendorp and Douglas Westendorp; and Choice In Education Foundation, Inc., Plaintiffs,

v.

Bruce H. JOHNSON, Commissioner, Minnesota Department of Children, Families and Learning; Arne H. Carlson, Governor, State of Minnesota; Independent School District No. 877 (Buffalo, Minnesota); and Independent School District No. 273 (Edina, Minnesota), Defendants.

Civil No. 4–96–642(DSD/JMM).

United States District Court,
D. Minnesota,
Fourth Division.

March 26, 1997.

1384

Daniel L. Bowles, C. Eric Hawes, Larkin, Hoffman, Daly & Lindgren, Bloomington, MN, for Joan Peter.

Daniel L. Bowles, C. Eric Hawes, Larkin, Hoffman, Daly & Lindgren, Bloomington, MN and Michael S. Paulsen, University of Minnesota Law Center, Minneapolis, MN, for Sarah Peter, Krista Westendorp, Douglas Westendorp, Aaron Westendorp, Choice in Educ. Foundation, Inc.

Lynn A. Zentner, U.S. Attorney Office, Minneapolis, MN, Janis C. Kestenbaum, Theodore C. Hirt, U.S. Dept. of Justice, Washington, D.C., for U.S.

Steven Liss, Rachel Kaplan, Minn. Atty. Gen., St. Paul, MN, for Bruce H. Johnson and Arne H. Carlson.

Paul C. Ratwik, Nancy E. Blumstein, Ratwik, Roszak, Bergstrom & Maloney, Minneapolis, MN, for Independent School Dist. No. 877, Buffalo, MN, Independent School Dist. No. 273, Edina, MN.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiffs' motion for preliminary injunction, plaintiffs' motion for partial summary judgment, and defendants' motions to dismiss. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court denies plaintiffs' motion for preliminary injunction and motion for partial summary judgment; and grants in part, and denies in part defendants' motions to dismiss.

## BACKGROUND

Plaintiff Sarah Peter is a child with Down's Syndrome disabilities. She resides with her mother, Joan Peter, in Buffalo, Minnesota, within the geographical boundaries of Independent School District No. 877. Plaintiff Aaron Westendorp is a child with disabilities resulting from a brain stem lesion. He resides with his parents Douglas Westendorp and Krista Westendorp in Edina, Minnesota, within the geographical boundaries of Independent School District No. 273. Plaintiff Choice In Education Foundation, Inc., is a Minnesota nonprofit corporation with members including parents of children with special education needs, religious schools, and religious organizations.

During the summer of 1995, Joan Peter enrolled her daughter, Sarah, in the Noah's Ark Preschool for the 1995–96 academic year. Plaintiffs describe Noah's Ark Preschool as a Christian preschool operated on the premises of St. John's Lutheran Church which consists of a preschool program religious in nature. Plaintiffs assert that Sarah was determined to be a child with a disability entitled to special education services. The officials of Independent School District No. 877 formulated an Individual Education Plan ("IEP") and determined that Sarah would benefit from the services of a paraprofessional aide. Plaintiffs allege that during the summer of 1995, officials of Independent School District No. 877 informed Sarah's mother that the school district could not provide a paraprofessional aide for her daughter if Sarah attended Noah's Ark preschool, because state regulations prohibited them from

providing such services on the premises of a religious school. Plaintiffs' Complaint ¶ 26. Because she was allegedly without the financial means to provide a paraprofessional aide for her daughter, Joan Peter enrolled Sarah in a public pre-school program for the 1995–96 academic year.

Plaintiff Aaron Westendorp attended Calvin Christian School from September 1991 until June 1994. Officials of the Independent School District No. 273 determined that Aaron was in need of special education services, including the assistance of a full-time paraprofessional. With the financial assistance of their church, the Westendorp family was able to provide for paraprofessional services for Aaron on-site at his religious school. When the Westendorp family changed churches, the Westendorp family was unable to obtain the financial support necessary for the services, and withdrew Aaron from the private school.

Plaintiff Choice in Education Foundation, Inc., ("the Foundation"), asserts that several of its parent-members have children with handicaps or other special needs making them eligible for special education assistance and, as a consequence of Minnesota's state regulations and interpretations of those regulations, the families have incurred expenses that they would not have incurred if their children were enrolled in nonreligious private schools. In addition, the Foundation asserts that its members include organizations of religious schools which have allegedly been discriminated against because of their programs' religious nature, content, and viewpoint.

Plaintiffs challenge Minnesota's regulations and policies which implement the state's policies and plan under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The IDEA states that children with disabilities are to be provided a "free appropriate public education." *See* 20 U.S.C. § 1400(c). The IDEA provides procedural and substantive requirements for participating State and local education agencies to follow to ensure that disabled children receive such education. The IDEA is implemented in Minnesota under the state statutes and regulations. *See*

Minn.Stat. § 120.17 (1994); Minn. Rules Chapter 3525. Under Minnesota law, every school district is to provide special instruction and services for children with a disability who are residents of the district. *See* Minn.Stat. § 120.17, subd. 1. Minnesota Rule 3525.1150, subpart 1, provides that school districts are "to identify and make available special education to all students who are disabled regardless of whether they attend a nonpublic school." Minnesota State Rule 3525.1150, subpart 2, provides that special education services provided directly or indirectly to the student "must be provided at a neutral site that is consistent with Minnesota Statutes, section 123.932, subdivision 9." A "neutral site" is defined as "a public center, a nonsectarian nonpublic center, a mobile unit located off the nonpublic school premises, or any other location off the nonpublic school premises which is neither physically nor educationally identified with the functions of the nonpublic school." *See* Minn.Stat. § 123.932, subd. 9. A "nonpublic school" is defined as "any school, church or religious organization, or home school" wherein a resident may legally fulfill the compulsory instruction requirements. Minn.Stat. § 123.932, subd. 3. A "nonsectarian nonpublic school" is defined as any nonpublic school which is not "church related, is not controlled by a church, and does not promote a religious belief." Minn. Stat. § 123.932, subd. 3a. A nonpublic sectarian school is not included in the definition of a "neutral site." Plaintiffs argue that Minnesota Rule 3525.1150, on its face and in effect, denies on-site special education services to otherwise eligible students attending private religious schools, but authorizes such services for eligible students attending private nonreligious schools when such services are deemed an appropriate part of a child's individual education plan. *See* Plaintiffs' Complaint ¶ 16.

In their complaint, Plaintiffs seek declaratory, injunctive, and monetary relief. Plaintiffs allege that the State's regulations and school district's policies violate the Free Speech and Free Exercise clauses of the First Amendment to the U.S. Constitution, the Equal Protection Clause of the Fourteenth Amendment, the Religious Freedom

Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, and the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*

Plaintiffs assert their claims against defendant Bruce H. Johnson, both in his individual capacity and in his official capacity as Commissioner of the Department of Children, Families, and Learning for the State of Minnesota, and defendant Arne H. Carlson, both in his individual capacity and in his official capacity as governor of the State of Minnesota (collectively referred to as "the State defendants"). Plaintiffs allege that the State officials are responsible for the interpretation, implementation, and enforcement of the challenged Minnesota Rule 3525.1150. Plaintiffs also assert their claims against Independent School District No. 877, and Independent School District No. 273 ("the school districts"). Plaintiffs claim that the school districts are responsible for the implementation of Minnesota State Rule 3525.1150, as interpreted and enforced by the State defendants. *See* Plaintiffs' Complaint ¶ 17.

The school districts move to dismiss plaintiffs' claims on four grounds; specifically, that the plaintiffs lack standing, that the plaintiffs' claims are not yet ripe for judicial review, that the plaintiffs failed to exhaust administrative remedies, and that the plaintiffs failed to state a claim for which the law provides a remedy. Likewise, the State defendants move to dismiss plaintiffs claims, alleging that plaintiffs have failed to state a claim under the Constitution or federal statutes, that plaintiffs failed to exhaust their administrative remedies under the IDEA, that plaintiffs' constitutional claims are not ripe for judicial review, that the State defendants are not "persons" under § 1983 and, in any event, are entitled to qualified immunity for damages under 42 U.S.C. § 1983, and that the Foundation lacks standing.

The plaintiffs oppose the motions to dismiss and move for a preliminary injunction to restrain defendants from enforcing the challenged regulations during the pendency of the proceedings and from "denying special education services, including on-premises services, to otherwise eligible handicapped children, on the basis of the religious nature,

content, or viewpoint, of the school attended by the child." Plaintiffs' Memorandum of Law in Support of Preliminary Injunction at 2. Plaintiffs also move for partial summary judgment on the IDEA claim.

## DISCUSSION

### A. Defendants' Motions to Dismiss

#### 1. Standard of Review

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). When analyzing a motion to dismiss, the court looks to the complaint as pleaded. The complaint must be liberally construed and viewed in the light most favorable to the plaintiff. In construing the sufficiency of the complaint, the court may consider materials attached to the complaint as exhibits. *See County of St. Charles, Missouri v. Missouri Family Health Council,* 107 F.3d 682 (8th Cir.1997) (recognizing that only the pleadings and materials attached to the complaint are considered on a motion to dismiss); *Hilton v. Pine Bluff Pub. Schools,* 796 F.2d 230, 231–32 (8th Cir.1986) (stating that materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint); *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). The court will dismiss a complaint only when it appears the plaintiff cannot prove any set of facts that support the claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, when matters outside of the pleadings are presented to the court and not excluded, a party's motion to dismiss for failure to state a claim upon which relief can be granted must be treated as a motion for summary judgment. *See Woods v. Dugan,* 660 F.2d 379, 380 (8th Cir.1981). The rule further provides that if the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, all parties must be given reasonable opportunity to present material pertinent to the motion. *See* Fed. R.Civ.P. 12(b). In this instance, plaintiffs

urge that the defendants have relied on affidavits outside of the pleadings in bringing their motions to dismiss. *See Gibb v. Scott,* 958 F.2d 814, 816 (8th Cir.1992) (discussing matters viewed as "outside the pleading"). Plaintiffs argue that the motions should be construed as motions to dismiss and that the affidavits should be excluded. However, the plaintiffs submitted affidavits in the event that the court considers matters outside of the pleadings. In doing so, the plaintiffs urge that they have been unable to produce more extensive affidavits due to a court order staying discovery. *See* Fed.R.Civ.P. 56(f). Rather than considering matters outside of the pleadings and converting defendants' motions to dismiss to motions for summary judgment, the court excludes and has not considered materials outside of the complaint and its attached exhibits.

### 2. Standing

■ This court's jurisdiction is limited by Article III of the U.S. Constitution, which limits the judicial power of the federal courts to "cases" and "controversies." U.S. Const., art. III, § 2, cl. 1. A threshold question in every case is whether the plaintiff has standing to invoke the jurisdiction of the federal courts. The standing doctrine is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 561, 112 S.Ct. 2130, 2136, 2137, 119 L.Ed.2d 351 (1992); *Mausolf v. Babbitt,* 85 F.3d 1295, 1301 (8th Cir.1996) (recognizing that standing requirement is indispensable part of case). To establish standing within the constitutional core requirements of Article III, a plaintiff must satisfy three elements: (1) that plaintiff suffered an injury in fact; (2) that there is a causal connection between plaintiff's injuries and the challenged action; and (3) that a favorable decision in the case would likely redress plaintiff's injuries. *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136; *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975) (placing burden of establishing standing on the party seeking federal jurisdiction). The defendants challenge plaintiffs' standing in the context of motions to dismiss. In *Lujan,* the Supreme Court reiterated the magnitude of a plaintiff's burden depending upon the stage in the proceedings:

> The party invoking federal jurisdiction bears the burden of establishing [the standing elements]. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed. R. Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

*Lujan,* 504 U.S. at 561, 112 S.Ct. at 2137 (internal case citations and quotations omitted).

### a. The Peters and Westendorps

■ The school districts argue that the Peters and Westendorps lack standing because they have failed to satisfy the "injury-in-fact" element. The alleged injury must be "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136 (internal citations and quotations omitted). The school districts assert that the students have not suffered an actual or imminent injury as a result of any school district policy because the students are not currently enrolled in private schools. In addition, the school districts assert that while the students and their parents are concerned about access to private religious education, such concern is not sufficient for the injury requirement.

As alleged in the complaint, both Sarah Peter and Aaron Westendorp were enrolled in private religious schools. Aaron Westendorp attended a private religious school for three years. By a fair reading of the allegations in the complaint and the attached exhibits, the parents withdrew their children from the private religious schools as a result of the school districts' alleged policies which they challenge in the complaint. The court concludes that the fact the children are not currently enrolled in private religious school does not make their injuries hypothetical or conjectural. Plaintiffs have alleged, to the satisfaction of the court, that there was injury. In addition, although the school districts do not challenge the other standing elements, the court concludes that the Peters and Westendorps have sufficiently alleged standing.

### b. Choice in Education Foundation, Inc.

The State defendants and school districts argue that the Foundation has failed to satisfy the standing requirement. The Foundation argues that, as an organization, it has standing to assert the rights and interests of its members. For an organization to have standing to bring suit on behalf of its members, the organization must satisfy a three-part test: (1) that its members would otherwise have standing to sue in their own right; (2) that the interests the organization seeks to protect are germane to the organization's purpose; and (3) that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

The defendants argue that the Foundation's members do not otherwise have standing to bring suit against the defendants; therefore, the Foundation does not have standing to bring claims as an organization on behalf of its members. The defendants specifically charge that the allegations in the complaint are insufficient as to the injury-in-fact element. The injury-in-fact test requires more than a cognizable interest; rather, the organization must sufficiently allege that its members are directly affected by the defendants' regulation and policies. *See Sierra Club. North Star Chapter v. Browner,* 843 F.Supp. 1304, 1309 (D.Minn.1993) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

The court has reviewed the complaint and observes that the Foundation has made no allegations that its parent-members sought special education assistance for their children within the statutory and regulatory framework at issue in this case, or that the parent-members and their children were denied such assistance because of the challenged regulation or policies. Moreover, the Foundation has failed to allege that its members even reside within the geographical boundaries served by Independent School District Nos. 273 and 877. Similarly, the Foundation has failed to allege a direct injury sustained by the religious organizations and schools which are members of the Foundation. Whereas the legislative entitlement to a "free appropriate public education" flows to the students and not to the private school, the possibility that a private religious school would sustain an injury as a result of a regulation or policy implementing the statutory entitlement for the individual is conjectural and hypothetical. Because the Foundation has failed to sufficiently allege that its members would otherwise have standing in their own right to bring an action against the defendants, the court concludes that the Foundation lacks standing and is dismissed as a party in this action.

### 3. Ripeness

Defendants argue that plaintiffs' IDEA claim is not ripe for judicial review. The ripeness doctrine's basic purpose " 'his to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' " *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Com'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (quot-

ing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). The question of ripeness tests "the fitness of the issues for judicial decision and the hardship to the parties of withholding consideration." *Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. at 1515.

■ The State defendants argue that plaintiffs' claims will not be ripe for review until the federal government directly denies plaintiffs the funding for special education services. *See* 20 U.S.C. § 1413(d). Similarly, the school districts argue that plaintiffs have failed to allege a real or imminent injury. The court is not persuaded by defendants' arguments. The plaintiffs have alleged the effects that the regulation and its implementation have had on their access to publicly funded on-site paraprofessional services at private religious schools such that the issues are not merely abstract or speculative. The court concludes that plaintiffs' challenge to Minnesota Rule 3525.1150 and related policies are ripe for judicial review.

#### 4. Exhaustion of Administrative Remedies

■ Defendants argue that the plaintiffs are barred from bringing this suit because they have failed to exhaust administrative remedies. The IDEA provides for an elaborate administrative scheme whereby plaintiffs are to exhaust their administrative remedies before seeking relief in federal court. *See* 20 U.S.C. § 1415(e); *see also* Minn.Stat. 120.17 (implementing IDEA's required procedural safeguards). The exhaustion doctrine embraces the principles that "agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer," and that an agency "ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992) (recognizing purposes of exhaustion of protecting administrative agency authority and promoting judicial efficiency); *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969).

■ When considering exhaustion of administrative remedies under the IDEA, courts have recognized that exhaustion of the administrative process "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *See Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1303 (9th Cir.1992); *see also Hendrick Hudson Bd. of Ed. v. Rowley*, 458 U.S. 176, 207–08, 102 S.Ct. 3034, 3051–52, 73 L.Ed.2d 690 (1982) (acknowledging that Congress has left difficult questions of educational practices and policies primarily to the expertise of state and local agencies).

■ Notwithstanding the strong policies in favor of exhaustion, the IDEA's exhaustion requirement is not absolute. Courts, relying in part on legislative history, have recognized exceptions to IDEA's exhaustion requirement when "the pursuit of administrative remedies would be futile or inadequate; waste resources, and work severe or irreparable harm on the litigant; or when the issues raised involve purely legal questions." *Pihl v. Massachusetts Dept. of Educ.*, 9 F.3d 184, 190 (1st Cir.1993); *see also Honig v. Doe*, 484 U.S. 305, 327, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988) (recognizing exception to exhaustion of administrative remedies when such action would be futile or inadequate); *Komninos by Komninos v. Upper Saddle River Board of Educ.*, 13 F.3d 775, 778–79 (3d Cir.1994) (exercising caution when determining whether to allow exception to the exhaustion requirement); *Independent School Dist. 623, Roseville, Minn. v. Digre*, 893 F.2d 987, 992 (8th Cir.1990). Moreover, courts have not required exhaustion when an agency has adopted a policy or pursued a practice of general applicability that is contrary to law. *See Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir.1987); *see also* H.R.Rep. No. 99–296, at 7 (1985), U.S. Code Cong. & Admin. News at 1798, 1809 (stating that administrative review procedures are not required in situations in which "(1) it

would be futile to use the due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)"). It is the plaintiffs' burden to demonstrate that their circumstances warrant excusal from the administrative procedures. *See, e.g., Honig,* 484 U.S. at 327, 108 S.Ct. at 606.

■ Although plaintiffs acknowledge that they have not exhausted their administrative remedies prior to filing this civil action, plaintiffs argue that their case warrants exercise of the "futility" exception. Pursuit of administrative procedures would be futile if "the agency either was acting in violation of the law or was unable to remedy the alleged injury." *Heldman v. Sobol,* 962 F.2d 148, 159 (2d Cir.1992). Here, plaintiffs seek the on-site provision of paraprofessional assistance at private religious schools, which plaintiffs allege is prohibited by state regulation. Plaintiffs brought this civil action challenging the state regulation and school district policies as unconstitutional and in violation of federal statute. Neither the hearing officer nor the Commissioner has authority to alter the state rule to include a private religious school as a permissible location for special education services. *See* Minn.Stat. § 120.17, subd. 3 (providing that the state board of education shall adopt rules implementing the statute); Minn.Stat. § 121.02, subd. 1 (creating a state department of children, families, and learning, which is maintained by the state board of education); Minn.Stat. § 121.16 (stating that the Commissioner of the department shall be the secretary of the state board and shall make recommendations to the board). The court agrees that resort to the administrative process would be an exercise in futility. Thus, the court concludes that plaintiffs' challenge falls within the IDEA's futility exception to the exhaustion requirement.

### 5. Eleventh Amendment Immunity

The plaintiffs seek declaratory, injunctive, and monetary relief, and allege constitutional violations pursuant to 42 U.S.C. § 1983, and statutory violations. The State defendants argue that they cannot be sued for damages in their official capacities under 42 U.S.C. § 1983. Furthermore, the State defendants argue that the plaintiffs allege violations against the State and, as such, their claims are thus subject to Eleventh Amendment immunity. In addition, the State defendants argue that in their personal capacities they are entitled to qualified immunity under 42 U.S.C. § 1983.

■ As a general rule, the Eleventh Amendment bars suits brought in federal court against states and their agencies in the absence of consent by the state or express abrogation by Congress within its authority. *See Seminole Tribe of Florida v. Florida,* ── U.S. ──, ─── ──, 116 S.Ct. 1114, 1122–23, 134 L.Ed.2d 252 (1996). By enacting 42 U.S.C. § 1983, Congress did not abrogate Eleventh Amendment immunity. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Notwithstanding lack of state consent or congressional abrogation, however, civil actions in federal court which seek injunctive relief against state officials are not always barred by the Eleventh Amendment. *Ex parte Young,* 209 U.S. 123, 155–56, 28 S.Ct. 441, 451–52, 52 L.Ed. 714 (1908). The Eighth Circuit Court of Appeals has explained that " '*Ex parte Young* recognized that suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law.' " *Treleven v. University of Minnesota,* 73 F.3d 816, 819 (8th Cir.1996) (quoting *Fond du Lac Band of Chippewa Indians v. Carlson,* 68 F.3d 253, 255 (8th Cir.1995)); *In re SDDS, Inc.,* 97 F.3d 1030, 1035 (8th Cir.1996) (recognizing *Ex parte Young* doctrine as a fundamental exception to Eleventh Amendment immunity). Furthermore, state officials are "persons" under § 1983 when sued pursuant to the *Ex parte Young* doctrine because "such actions 'are not treated as actions against the State.' " *Treleven,* 73 F.3d at 819 (quoting *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304 n. 10, 2312, 105 L.Ed.2d 45 (1989)). The plaintiffs concede that they only seek declaratory

**1394**

and injunctive relief against the State defendants on their § 1983 claims, and that they do so under the *Ex parte Young* doctrine.[1] Because the plaintiffs seek injunctive relief against the State defendants in their official capacities for alleged violations of federal law, the court concludes that the § 1983 claims against the state defendants are not barred by the Eleventh Amendment. *See, supra,* Footnote 1. Because the plaintiffs do not seek damages from the State defendants, the court need not address the issue of qualified immunity. The court dismisses the plaintiffs' claims alleged against the State defendants in their individual capacities.

■ Plaintiffs assert that Congress has abrogated States' Eleventh Amendment immunity with respect to IDEA claims. A court conducts a two-fold inquiry to determine whether Congress has abrogated States' immunity from suit: first, a court must determine whether Congress has "'unequivocally expressed'" its intent; and second, a court must determine whether Congress has acted "'pursuant to a valid exercise of power.'" *See Seminole Tribe,* — U.S. at —, 116 S.Ct. at 1123 (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)).

■ Under 20 U.S.C. § 1403, Congress unequivocally expressed its intent to abrogate States' immunity from suit for any violations that occur in whole or part after October 30, 1990. *Compare Dellmuth v. Muth,* 491 U.S. 223, 232, 109 S.Ct. 2397, 2402–03, 105 L.Ed.2d 181 (1989) (holding that the statutory language of the Education of the Handicapped Act ("EHA"), 20 U.S.C. § 1400, *et seq.,* failed to "evince an unmistakably clear intention to abrogate the States' constitutionally secured immunity from suit") *with*

20 U.S.C. § 1403(a) (1990) (stating under subsection entitled "State immunity abrogated," that a State "shall not be immune under the [E]leventh [A]mendment to the Constitution of the United States from suit in Federal court for a violation" of the IDEA). In addition, Congress enacted the IDEA pursuant to a valid exercise of its powers under § 5 of the Fourteenth Amendment of the U.S. Constitution. *See Seminole Tribe,* — U.S. at —, 116 S.Ct. at 1125 (recognizing the enforcement provision of the Fourteenth Amendment as valid authority for Congress to abrogate States' immunity from suit in federal court); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976); *see also Dellmuth,* 491 U.S. at 227, 109 S.Ct. at 2399–2400 (recognizing the parties' concessions that the EHA was enacted pursuant to Congress' authority under § 5 of the Fourteenth Amendment); 20 U.S.C. § 1400(b)(9) (finding of Congress that it is in "the national interest that the Federal Government assist State and local efforts to provide programs to meet the educational needs of children with disabilities in order to assure equal protection of the law"). The court is satisfied that Congress abrogated States' immunity under the Eleventh Amendment.

**6. Failure to State a Claim**

**a. Constitutional Claims**

Section 1983 of Title 42 creates no substantive rights, but provides a remedy when rights secured by federal law or the Constitution are deprived under color of state law. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). An underlying constitutional right must exist before a cause of action under section 1983 will lie. Plaintiffs must show

1. Plaintiffs claim that they bring their suit against the State defendants in both their individual and official capacities. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss. The plaintiffs, citing the *Ex Parte Young* doctrine, claim that the "individual capacity action" provides the basis for declaratory and injunctive relief from allegedly unconstitutional actions taken under color of state law, and that the "official capacity action" is really a suit against the State on the IDEA claim. Because courts recognize that the *Ex Parte Young* doctrine is an exception to Eleventh Amendment immunity in which state officials may be sued in their official capacities for prospective injunctive relief, the court concludes that the entire action is a suit against the State defendants in their official capacities. *See, e.g., Treleven v. University of Minnesota,* 73 F.3d 816, 819 (8th Cir.1996). To clarify, the court considers the § 1983 claims to be alleged against the State defendants in their official capacities, and dismisses plaintiffs' claims to the extent that they are asserted against the State defendants in their individual capacities.

that defendants violated a right, privilege or immunity protected by the Constitution or laws of the United States.

■ Plaintiffs allege violations of the Freedom of Speech and Free Exercise of Religion Clauses of the First Amendment, and violations of the Equal Protection Clause of the Fourteenth Amendment. Both the State defendants and the school districts assert that plaintiffs have failed to allege cognizable constitutional violations because the challenged regulation and policies distinguish between public and nonpublic schools. The school districts further contend that the policies regarding the location of services are neutral policies of general applicability which do not permit on-site special education services at any nonpublic school, regardless of whether the school is religious or nonreligious. Plaintiffs oppose defendants' position as ignoring the standard of review for a motion to dismiss. The court has reviewed the complaint and the attached exhibits. Construing plaintiffs' allegations in the most favorable light, the court concludes that plaintiffs have sufficiently alleged that defendants treat nonpublic religious schools differently from nonpublic nonreligious schools with respect to on-site paraprofessional services. Such allegations sufficiently allege violations of the First and Fourteenth Amendments of the U.S. Constitution to overcome defendants' motions to dismiss. *See Rosenberger v. Rector & Visitors of Univ. of Virginia,* —— U.S. ——, ——, 115 S.Ct. 2510, 2517, 132 L.Ed.2d 700 (1995) (discussing government regulation of speech because of content or viewpoint of message); *Church of Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520, 531–33, 113 S.Ct. 2217, 2226, 124 L.Ed.2d 472 (1993) (discussing need for compelling government interest when law is not neutral and of general applicability as to religion); *City of Cleburne v. Cleburne Living Center., Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985) (discussing level of scrutiny applied to state law which impinges on personal rights protected by the Constitution). Thus, defendants' motions to dismiss plaintiffs' constitutional claims must be denied.

**b. Religious Freedom Restoration Act Claim**

Under Count IV of the complaint, plaintiffs allege that defendants' policies and actions violate plaintiffs' rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq.* In their submissions to the court, the State defendants challenged the constitutionality of RFRA. Pursuant to 28 U.S.C. § 2403(a), the court certified notification of the challenge to RFRA's constitutionality to the United States Department of Justice. The United States requested leave to intervene in this action for the limited purpose of defending the constitutionality of RFRA. The court granted the United States' request pursuant to 28 U.S.C. § 2403(a), and Rule 24(a) of the Federal Rules of Civil Procedure.

On October 15, 1996, the Supreme Court granted writ of certiorari to review *Flores v. City of Boerne,* 73 F.3d 1352 (5th Cir.1996), which presents the issue of the constitutionality of RFRA. The parties agree that the pending motions may be resolved without addressing the RFRA claim; thus, the court does not address the RFRA claim or constitutional challenge at this time.

**c. IDEA Claim**

■ Defendants move to dismiss plaintiffs' IDEA claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because the plaintiffs have moved for partial summary judgment on this claim, the court has reviewed affidavits submitted by all parties with respect to this claim. Because the court has considered materials outside of the pleadings as to this count, the court concludes that it is proper to consider defendants' motions to dismiss as cross-motions for partial summary judgment. In making this determination, the court considered plaintiff's concession that, if the court is persuaded by defendants' analysis of the IDEA claim, then the defendants would be entitled to prevail on that claim. See Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment at 17.

## B. Plaintiffs' Motion for Partial Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, in order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. at 2510.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court considers the issue of partial summary judgment on plaintiffs' IDEA claim.

Whereas the plaintiffs argue that the plain language of Minnesota Rule 3525.1150 and the school districts' denial of services to Sarah Peter and Aaron Westendorp violates the U.S. Constitution by allegedly discriminating in the provision of special education services on the basis of the religious content and viewpoint of a private school's instructional programs, the plaintiffs accept defendants' factual statements for purposes of their motion for partial summary judgment on the IDEA claim.[2] Thus, for the purposes of this motion, the plaintiffs accept that the school districts deny on-site services to all children attending private schools, religious or nonreligious. Plaintiffs maintain that the IDEA and its regulations mandate that on-site special education services be provided at nonpublic schools to students whose special education needs are such that they require individualized paraprofessional services in their regular classrooms.

The defendants oppose plaintiffs' motion. Defendants assert that the IDEA and its regulations do not require the school districts to provide on-site special education services to children in nonpublic schools.[3] The defendants argue that their policies are consistent with the IDEA and its regulations which distinguish between public school students and unilaterally-placed private school students. In support of their argument, the defendants refer the court to the IDEA and its regulations, the Department of Education's interpretations, and decisions from other courts which have addressed the issue.

The IDEA conditionally provides federal grants to states which then provide local school districts with funds to establish special education services for children with disabilities. To qualify for assistance from the federal government, states must adopt a policy

**2.** Plaintiffs assert that they did not focus on the IDEA claim in their motion for a preliminary injunction because the state regulations, on their face, do not exclude students attending all private schools from on-site services but only those attending private religious schools. Plaintiffs advise the court that if they prevail on the IDEA claim, their preliminary injunction motion would become moot since the partial summary judgment would effectively provide them with the immediate prospective relief they seek. There-fore, the court first considers plaintiffs' motion for partial summary judgment.

**3.** In addition to disagreeing with plaintiffs as to the interpretation of the IDEA and its regulations, defendants also oppose plaintiffs' motion by raising arguments previously addressed by the court. Because the court has already analyzed the issues of standing, exhaustion, and ripeness, the court relies on its preceding discussion of those issues.

that "assures all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412(1). To achieve this objective, each state must also develop a plan. 20 U.S.C. § 1412(2). To receive payments, each local school district must develop an individualized education program ("IEP") for each child with a disability identifying the special education services that are necessary to meet that child's needs, and offer to provide those services at public expense. 20 U.S.C. §§ 1412(4), 1414(a)(1), (5). The statutory provisions and regulations differentiate between three categories of students with disabilities: (1) students who attend public schools; (2) students who have been placed in private schools by the school district; and (3) students who have been placed in private schools by the unilateral, or voluntary placement of a parent. *See Fowler v. Unified School Dist. No. 259,* 107 F.3d 797 (10th Cir.1997) (reciting categories with reference to statutory provisions); *see also* 20 U.S.C. §§ 1412(1), (2)(B), 1413(a)(4)(A), (B); 34 C.F.R. §§ 300.400–.452, 76.650–.655; *Cefalu v. East Baton Rouge Parish School Bd.,* 103 F.3d 393, 396–97 (5th Cir.1997) (tracing the statutory and regulatory provisions); *K.R. by M.R. v. Anderson Community School Corp.,* 81 F.3d 673, 678 (7th Cir.1996) (describing categories and benefits conferred for each), *petition for cert. filed,* 65 U.S.L.W. 3166 (U.S. Aug. 26, 1996) (No. 96–323).

Under the IDEA, students in public school are to receive all special education and related services at public expense. *See* 20 U.S.C. §§ 1401(a)(18); 1412(1) & (2)(B), 1412(4), 1414(a)(5); *see also Fowler,* 107 F.3d at 801; *Anderson,* 81 F.3d at 678. Similarly, children referred to private schools by the State or school district are provided special education and related services at no cost to their parents. *See* 20 U.S.C. § 1413(a)(4)(B); 34 C.F.R. § 300.401 (providing that student who is placed in private school by state or local agency is to be provided special education and related services has all the rights of a child with a disability who is served by a public agency and is to receive the benefits at no cost to the parents). In contrast, the statutory provisions and accompanying regulations speak differently about students who voluntarily attend private schools.

The statute requires that each state's plan must set forth policies and procedures to assure that:

> to the extent consistent with the number and location of children with disabilities in the State who are enrolled in private elementary and secondary schools, provision is made for the participation of such children in the program assisted or carried out under this subchapter by providing for such children special education and related services. . . .

20 U.S.C. § 1413(a)(4). The regulations further provide that if a child with a disability has a "free appropriate public education" available, and the parents choose to place the child in a private school or facility, the public agency is not required to pay for the child's education at the private school; however "the public agency shall make services available to the child as provided under §§ 300.450–300.452." 34 C.F.R. § 300.403. Any disagreements as to the availability of a program and the question of financial responsibility is subject to the due process procedures provided for by the statute and its regulations. *Id.* Similar to the statutory provision, the regulation provides that the state agency is to ensure that, "to the extent consistent with their number and location in the State, provision is made for the participation of private school children with disabilities in the program assisted or carried out under this part by providing them with special education and related services." 34 C.F.R. § 300.451. Also, the state agency must ensure that the requirements of 34 C.F.R. §§ 76.651–76.662 are met. *Id.* In addition, each local school district must provide special education and related services "designed to meet the needs of private school children with disabilities residing in the jurisdiction of the agency." 34 C.F.R. § 300.452.

The incorporated regulations are from the Education Department's General Administrative Regulations ("EDGAR"). *See* 34 C.F.R. §§ 76.651–76.662. The EDGAR provisions recognize that under some programs, the authorizing statute requires that a State and its subgrantees (the local education agencies) provide for participation by students enrolled

in private schools; thus, the provisions provide rules for that participation. The local education agency is to "provide students enrolled in private schools with a genuine opportunity for equitable participation" and to "provide that opportunity to participate in a manner that is consistent with the number of eligible private school students and their needs." 34 C.F.R. § 76.651(a)(1), (2). In forming the program, the local education agency is to consult with appropriate representatives of students enrolled in private schools and consider which children will receive benefits; how the children's needs will be identified; what benefits will be provided; and how the benefits will be provided. 34 C.F.R. § 76.652(a)(1), (2), (3), (4). The local education agency must consider the student needs, student numbers, and benefits provided under the program on a basis comparable to that used in providing for participation of public school students. 34 C.F.R. § 76.653. The program benefits that are provided for students enrolled in a private school "must be comparable in quality, scope, and opportunity for participation to the program benefits that the subgrantee provides for students enrolled in public schools." 34 C.F.R. § 76.654(a).

Defendants argue that the statute and its implementing regulations provide the state and the local school districts with broad discretion in determining whether to provide special education to students voluntarily attending private schools. This position is consistent with that taken by the Department of Education in interpreting its own regulations. The Department of Education has, on numerous occasions, consistently stated its position with respect to the provision of special education services for students who voluntarily attend private schools. 49 Fed.Reg. 48522 (Dec. 12, 1984) (stating position of Department that special education services are not required to be provided "to each and every private school handicapped child"); *Letter to McConnell*, 22 Indiv. with Disabilities Educ. L. Rep. 369 (1994) (recognizing Department's position that a school district's obligation to students voluntarily attending private schools is not the same as that owed to students publicly placed at private schools); *Letter to Schmidt*, 20 Indiv. with Disabilities Educ. L. Rep. 1224 (1993) (stating that students voluntarily attending private school do not have "an individual entitlement to services"; therefore, school districts are not required to provide such services); *Letter to Mentink*, 18 Indiv. with Disabilities Educ. L. Rep. 276 (1991) (reiterating Department's position that a public agency may elect not to serve every parentally-placed child residing in its jurisdiction, and is not required to make the full range of services available to students of whom it has elected to serve); *Letter to Livingston*, 17 Education for the Handicapped L. Rep. 523, 524–25 (1991) (responding that if free appropriate public education is made available to a child with disabilities, but the parents choose to place their child in a private school, the local school district is not obligated to provide the child with free appropriate public education at the private school and the local agency may "elect not to serve every parentally-placed child residing in its jurisdiction"); *Letter to Williams*, 18 Indiv. with Disabilities Educ. L. Rep. 742, 743–44 (1991) (stating that private school students do not have an individual entitlement to receive special education and related services). The court is mindful that an agency's interpretations are to be given weight by the court unless the interpretations are plainly erroneous or inconsistent with the regulations. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 510–12, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994). Defendants urge the court to yield substantial deference to the Department's interpretations.

Although courts readily recite the statutory provisions and regulations, there is grave disagreement as to their meaning and application, particularly in a situation such as this, when a student requires on-site, individualized, special education services. *Fowler*, 107 F.3d at 809 (cautioning that their holding may "have a very short shelf life" considering that petitions for certiorari have been filed in other cases seeking guidance from the Supreme Court on this issue); *Cefalu*, 103 F.3d at 397 (warning that when an attempt is made to apply the statutory and regulatory provisions to such a situation, "the IDEA and its implementing regulations are amorphous

in design and imprecise in message"); *Anderson*, 81 F.3d at 678 (referring to the IDEA and its regulations as a "complex set of statutory and regulatory provisions"). Because the Eighth Circuit Court of Appeals has not addressed the issues presented, this court by necessity looks to the other Circuit Court of Appeals' decisions for guidance.

The parties agree that there is a split in the decisions of the circuit courts that have addressed this issue and, since the parties' briefing and hearing on the issue, that split has widened. As stated, the courts have reached varying results, ranging from deferring broad discretion to the state and local school districts to requiring the state and local school districts to provide special education services to students at private schools. *See Fowler*, 107 F.3d at 807 (determining that when the cost of special services does not vary with the location of the services, that it is "a fair and reasonable interpretation of the Act and regulations to require the District to pay the same amount" toward the on-site service that the student needs in the private school setting, as "the average amount the District pays for such services" in the public schools); *Cefalu*, 103 F.3d at 398 (proclaiming burden-shifting rule in which the private school student "must make an initial showing of a genuine need for on-site services, based upon more than mere convenience"; if the student makes the showing, then "the agency must provide on-site services *unless* it presents a justifiable reason, either economic or non-economic, for its denial of on-site services; and finally, the student then bears the burden of "showing that the agency's position is inconsistent with the IDEA and its regulations, or is not rationally supportable, or is otherwise arbitrary"); *Russman by Russman v. Sobol*, 85 F.3d 1050, 1056–57 (2d Cir.1996) (determining that the IDEA and regulations were more consistent with mandatory entitlements than broad discretion and required school district to provide on-site special education services at private school when economies of scale were not affected by the location of the services), *petition for cert. filed*, 65 U.S.L.W. 3381 (U.S. Nov. 18, 1996) (No. 96–776); *Anderson*, 81 F.3d at 680 (determining that the IDEA and its regulations do not require

a public school to make "comparable provisions for a disabled student voluntarily attending private school as for disabled public school students"); *Goodall by Goodall v. Stafford County Sch. Bd.*, 930 F.2d 363, 369 (4th Cir.) (concluding that when the special education services are provided at a public school, the school district is in full compliance with the requirements of the statute and the regulations; if the services are meaningless, it is because of the parents' decisions and conditions for the student's education and not by the operation of any state or federal law), *cert. denied*, 502 U.S. 864, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991).

In analyzing the statute, its regulations, and the decisions which have addressed the issue, the court is persuaded that the statute and its regulations differentiate among categories of students with disabilities depending upon whether the student attends a public school or private school; and, if the student attends a private school, whether the student was publicly or unilaterally placed in the private school setting. In addition, the court is mindful of the discretion that is generally afforded to the state and local school districts when decisions in educational policy are implicated, particularly when the allocation of scarce resources is involved. Notwithstanding decisions that have held otherwise, the court determines that broad discretion to the state and local school districts is appropriate in light of the statute, its implementing regulations, and the Department of Education's position. The court is persuaded by the *Anderson* court's analysis that Congress intended to give disabled students voluntarily attending private school a lesser entitlement under the statute. *Anderson*, 81 F.3d at 678. Although programs provided to private school children must be comparable in quality, scope, and opportunity, the comparability requirement is confined to the program benefits which the agency elects to provide to unilaterally-placed students. *Id.* This is not to say that there are not circumstances in which a state or local school district could be found to have abused its discretion, but the plaintiffs have not made that allegation, and those facts are not before the court. Thus, the court concludes that the statute and its regulations do

not require the State defendants or local school districts to provide on-site paraprofessional services to the plaintiffs at private schools as a component of their individualized education program. Because the court decides that there is no individual entitlement to services under the IDEA and its regulations for unilaterally-placed private school children with disabilities who require individualized services, the court need not address whether the Establishment Clause provides a justification for the denial of publicly funded on-site assistance. The court concludes that the defendants are entitled to partial summary judgment on the IDEA count.

## C. Plaintiffs' Motion for Preliminary Injunction

Plaintiffs seek a preliminary injunction enjoining the defendants from enforcing Minnesota Rule 3525.1150, and forcing defendants to provide on-site paraprofessional services to otherwise eligible disabled students who attend private schools, religious or nonreligious. Because the court has determined that the IDEA and its regulations do not require that the State and local school districts provide such services, the court considers plaintiffs' motion only as to its remaining constitutional and RFRA claims.

The court considers four factors in determining whether to grant the plaintiffs' motion for a preliminary injunction:

1. Is there a substantial threat that the plaintiffs will suffer irreparable harm if relief is not granted;

2. Does the irreparable harm to the plaintiffs outweigh any potential harm that granting a preliminary injunction may cause the defendants;

3. Is there a substantial probability that the plaintiffs will prevail on the merits; and

4. The public interest.

*Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (en banc). The court balances the four factors to determine whether a preliminary injunction is warranted. *Id.* at 113; *West Publishing Co. v. Mead Data Cent. Inc.,* 799 F.2d 1219, 1222 (8th Cir.1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). The plaintiffs bear the burden of proof concerning the four factors. *Gelco Corp. v. Coniston*

*Partners,* 811 F.2d 414, 418 (8th Cir.1987). The plaintiffs' burden is even greater when the movants are not seeking to maintain the status quo, but rather are seeking to obtain the same relief they would receive after a trial on the merits. *See Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.,* 997 F.2d 484, 486 (8th Cir.1993) (stating heavier burden); *Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.,* 815 F.2d 500, 503 (8th Cir.1987) (recognizing that a preliminary injunction is an extraordinary remedy). In this instance, the plaintiffs do not seek to maintain the status quo, rather they seek an order enjoining allegedly inequitable enforcement of Minnesota Rule 3525.1150, and requiring defendants to provide on-site paraprofessional services to plaintiffs at private religious schools.

Plaintiffs must first establish that harm will result without injunctive relief and that the harm will not be compensable by money damages. Possible or speculative harm is not enough. The absence of such a showing alone is sufficient to deny a preliminary injunction. *Gelco,* 811 F.2d at 420; *Roberts v. Van Buren Pub. Schools,* 731 F.2d 523, 526 (8th Cir.1984). The defendants argue that plaintiffs have not been harmed because they are receiving a "free appropriate public education" at their respective public schools. Plaintiffs, however, urge that they have been denied constitutional rights which constitutes irreparable harm. Whereas a constitutional violation constitutes irreparable harm, in this instance the plaintiffs do not deny that they are receiving the paraprofessional services which they seek at the public school.

The second *Dataphase* requirement is that the harm to plaintiffs must outweigh the potential harm that granting a preliminary injunction may cause defendants. *Dataphase,* 640 F.2d at 114. Defendants urge that the relief which plaintiffs seek could have broad reaching effects on the State and local school districts in their ability to allocate limited resources within their budgets. If the plaintiffs were to prevail in this action, the defendants request that the court enjoin enforcement of the regulation and alleged policies altogether, such that on-site paraprofessional services would not be provided for students attending nonpublic schools, regard-

less of the religious or nonreligious nature of the curriculum. The court finds that defendants would be harmed if injunctive relief were granted and, upon balancing the harms, finds the balance weighs against granting injunctive relief.

The third *Dataphase* factor requires plaintiffs to establish a reasonable probability of success on the merits. In this instance, plaintiffs assert that the defendants differentiate in their provision of on-site special education services between nonpublic religious schools and nonpublic nonreligious schools. Plaintiffs have not submitted admissible evidence substantiating their allegations, but the court recognizes that their ability to conduct discovery has been hindered by court order staying discovery. In their submissions, defendants claim that they enforce and implement a neutral policy which does not differentiate between the nonpublic-religious schools and nonpublic-nonreligious schools.

The final *Dataphase,* factor requires the court to consider the public interest. *Dataphase,* 640 F.2d at 114. The public has an interest in assuring that the state and local school districts comply with the U.S. Constitution and federal statutes by promulgating and enforcing regulations and policies within the confines of the law. The ability of the State and local school districts to maintain fiscal responsibility and to equitably allocate scarce resources among students in need of special education services is also important to the public interest.

In balancing the *Dataphase* factors, the court has considered the broad discretion that the state and local school districts have in providing educational services and defining educational policy. As such, the type of injunctive relief that the defendants propose in opposition to plaintiffs' request for relief would be more appropriate in this case should the plaintiffs prevail on the merits of their claims at the disposition of this action. The court concludes that even if the plaintiffs were to prevail on their constitutional and federal claims, it would be inclined to enjoin enforcement of the regulations and policies to reflect the policies to which the defendants urge they currently adhere: that defendants do not provide on-site paraprofessional services to any student voluntarily attending private school, regardless of the school's religious or nonreligious nature. Thus, plaintiffs' motion for preliminary injunction is denied.

## CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for preliminary injunction is denied (Docket Nos. 3 and 20);

2. Plaintiffs' motion for partial summary judgment is denied (Docket No. 67);

3. Defendants' motions to dismiss are granted in part and denied in part (Docket Nos. 13, 27, and 29). Defendants' motions to dismiss plaintiff Choice in Education Foundation, Inc., as a party to this action are granted. Defendants' motions to dismiss, converted to cross-motions for partial summary judgment as to the IDEA count (Count V), are granted. Defendants' motions to dismiss the State defendants in their individual capacities are granted. Otherwise, defendants' motions to dismiss are denied;

4. Plaintiffs' objections to Magistrate Judge Jonathon Lebedoff's order staying discovery are denied as moot.